205 N.J. Super. 519 (1985)
501 A.2d 561
MICHELLE DE ANGELIS, PLAINTIFF-RESPONDENT,
v.
JAMESWAY DEPARTMENT STORE; HARRY FORBES, DETECTIVE OF SECURITY FOR JAMESWAY DEPARTMENT STORE, AND JOHN DOE, MANAGER (SAID JOHN DOE BEING A FICTITIOUS NAME), DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 1985.
Decided November 22, 1985.
*521 Before Judges PRESSLER, DREIER and BILDER.
Walter Koprowski, Jr. argued the cause for appellants (Velardo & Koprowski, attorneys; Walter Koprowski, Jr. and Joseph T. Delgado, on the brief).
Alfred E. Fontanella argued the cause for respondent (Fontanella & Benevento, attorneys; Alfred E. Fontanella, on the brief).
Brendan T. Byrne argued the cause for New Jersey Retail Merchants Association, amicus curiae (Carella, Byrne, Bain & Gilfillan, attorneys; no brief filed).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal by Jamesway Department Store and one of its loss prevention managers, Harry Forbes, from an adverse judgment in an action brought by an employee for false imprisonment. Following a six-day jury trial, plaintiff was given a judgment for compensatory damages of $10,300 and punitive damage of $100,000. In their brief on appeal, defendants make the following contentions:
Point I. The facts giving rise to the instant case and the standards to be applied with respect to the defendants' conduct fall within the parameters of N.J.S.A. 2C:20-11.
Point II. Defendants had the common law right to detain the plaintiff because they acted with probable cause.
Point III. The trial court improperly permitted the plaintiff to introduce proof as to conduct subsequent to September 3, 1982.
Point IV. Punitive damages are not recoverable by the plaintiff as a matter of law.
Point V. The jury verdict was against the weight of the evidence.
Seventeen-year old Michelle De Angelis, the plaintiff, was employed by Jamesway as a cashier. Harry Forbes was the Loss Prevention District Manager whose responsibilities encompassed the Pompton Plains store in which plaintiff worked. His duties included, among other things, investigations of employee dishonesty.
*522 On September 3, 1982, Forbes went to the Pompton Plains store to investigate employee defalcations. In the course of this, he interviewed Terry Sherrer, co-employee of plaintiff. Ms. Sherrer admitted dishonesty and implicated a number of other employees, including plaintiff. Her accusation, as reflected in a written statement given that day, charged plaintiff with participation in the theft of money from the service desk cash register.
I have been stealing from Jamesway # 62 in several different methods. The 1st I remember is that I stole money from the Service desk. The 1st time I did this was when I was working the desk with another employee Michelle De Angelis. We got to talking about how easy it would be to steal money from the company by just making up a persons name and write a refund up and steal the money. I did this and signed the slip. I rang it up for $20.00 and I put the other $10.00 down on the Service desk for Michelle. We had a conversation about how we would split the money before I did the refund. This is the only time I did this with Michelle, because this was the last time I worked with her.
On the basis of this charge, plaintiff was brought to an office in the rear of the store and subjected to an intensive interrogation for several hours in the evening. According to plaintiff she was told she was wanted in the rear of the store. The assistant manager, Marshall, accompanied her to the office of the manager, Lloyd. Forbes was seated behind a desk. Marshall departed, leaving plaintiff alone with Forbes.
From the evidence the jurors could have found that there then followed a four-hour period during which plaintiff was lectured about theft, shouted at, frightened, charged with theft and forced to admit to a crime she did not commit. In ruling on the motion for judgment n.o.v., the trial judge capsulized her lengthy ordeal in the following manner:
Plaintiff said she was called into a room. She was lectured about theft; she was becoming frightened because Mr. Forbes' voice was getting louder. Mr. Forbes said that he has proof and witnesses so you better admit what you did. She said he slammed his fist on the desk; he put his face close to hers and said you're wasting my time; you're getting me frustrated. He said you are staying here until you confess. That would certainly indicate that she wasn't free to leave. He said he would call her parents and tell them the kind of child she is yet, he refused to permit her to speak to her parents. She said she was shaking; she was crying; she was nervous and she was horrified.
*523 A reading of plaintiff's description of the ordeal is reminiscent of the type of psychological coercion deplored by the U.S. Supreme Court in Miranda v. Arizona, 384 U.S. 436, 448-455, 86 S.Ct. 1602, 1614-18, 16 L.Ed.2d 694 (1966). Even the good guy-bad guy technique was used as the store manager appeared from time to time to offer her the easy way out. Id. at 452, 86 S.Ct. at 1616.
Mr. Marshall, the manager of the store, said to her why don't you tell him then, you will be set free and the clear apprehension is that she was not going to be free until she did confess. She was threatened with jail. The conclusion of all this is that the 17 year old girl was so frightened and so put upon and so pressed that she confessed to something that she didn't do. [Trial judge on motion for judgment n.o.v.]
The coerced false confession, the evil that concerned the Miranda court, evidences the outrageous nature of defendants' conduct. Plaintiff's description of the interrogation is fully corroborated by her accuser, Ms. Sherrer who, when called by defendants as a witness, gave a similar description of her interrogation. She also testified that her statement implicating plaintiff had been false  that plaintiff had never participated in any such theft.
In his charge, which defendants accepted as correct except for their privilege claim, the trial judge told the jury:
False imprisonment, Ladies and Gentlemen, is the unlawful detention of an individual. In this context the word "detention" means the unlawful restraint of a person's personal liberty or freedom of movement and the word "unlawful" means without legal authority. Such unlawful restraint may result from actual force or it may result by threats consisting of words or conduct which induces reasonable apprehension of force.
The unlawful detention need not be for more than an appreciable length of time, as even a brief restraint of a person's freedom is sufficient to constitute a false imprisonment. The restraint, however, must be against the Plaintiff's will. If the Plaintiff agreed of her own free choice to surrender her freedom of movement or personal liberty, there is no false imprisonment. To constitute a false imprisonment the act of the Defendant in confining the Plaintiff must have been done with the intention of causing a confinement. A purely accidental confinement without an intent to confine is not false imprisonment nor is a confinement due to the negligence of a defendant a false imprisonment.
It is not a necessary ingredient in a cause of action based upon false imprisonment that a Defendant be motivated by malice in the sense of ill will or *524 a desire to injure, although as I will explain to you shortly the presence or the absence of malice may be shown in aggravation or in mitigation of damages.
Now, you should also know, Ladies and Gentlemen, that an employer certainly may request an employee to participate in an interview or in an investigation. But an employer may not compel an employee to submit to or to participate in an interview or an investigation. An employer has no special privilege to restrain the freedom of his employees' movements against the employees' will. An employee is not required to submit to his employer's questioning or to an interview merely because of the existence of the relationship of an employer and employee. Rather, an employee has the right to refuse to participate and to leave the employer's premises or any other place that an interview is taking place or is about to take place.
Now, to be sure this may entail some other consequences for the employee. Clearly, the employee may be endangering her job. Indeed, loss of employment may be one reason why an employee would participate in the interview. But that is different, Ladies and Gentlemen, than saying an employee must participate or cooperate. My point is that there is no right that an employer has to compel an employee to participate in an investigation and there's no obligation that the law imposes upon an employee that prevents an employee from refusing to participate.
Defendants do not challenge these principles; instead they contend they were entitled to detain and interrogate plaintiff as they did by virtue of a statutory privilege given store owners by N.J.S.A. 2C:20-11 or, alternatively, by "a common law privilege granted to merchants to detain individuals suspected of theft based upon probable cause." See Restatement, Torts 2d, § 120A at 202-204 (1965).
N.J.S.A. 2C:20-11 is an anti-shoplifting act which permits merchants to detain for investigation individuals reasonably suspected of shoplifting without incurring civil liability.
A law enforcement officer, or a special officer, or a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover the merchandise by taking the person into custody, may, for the purpose of attempting to effect recovery thereof, take the person into custody and detain him in a reasonable manner for not more than a reasonable time, and the taking into custody by a law enforcement officer or special officer or merchant shall not render such person criminally or civilly liable in any manner or to any extent whatsoever. [N.J.S.A. 2C:20-11e as relevant]
The trial judge ruled the privilege inapplicable to the facts in this case, barred the defendants from arguing it to the jury, and did not include it in his instructions to the jury. In so *525 doing, he was correct. A reading of this section makes it clear that it is addressed to the theft of merchandise. The detention is solely for the purpose of allowing the merchant to recover the goods. See Cooke v. J.J. Newberry & Co., 96 N.J. Super. 9, 14-15 (App.Div. 1967). There was no contention that plaintiff had taken any merchandise.
Nonetheless, defendant argues that the acts with which plaintiff was charged were encompassed within the meaning of "shoplifting" (defined in N.J.S.A. 2C:20-11b) and made its response privileged. Amicus curiae argues that the privilege is found in the final paragraph of N.J.S.A. 2C:20-11e, which reads as follows:
A merchant who causes the arrest of a person for shoplifting, as provided for in this section, shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting.
A reading of the Shoplifting Act, N.J.S.A. 2C:20-11, makes it clear that the evil the statute addresses is the taking of merchandise without full payment. Thus it encompasses not only stealing merchandise, but also acts which cause the price to be "under-rung"  that is, acts which cause the sale to be charged or rung up at a price less than the true sale price. N.J.S.A. 2C:20-11b(3) (altering price markings), 11b(4) (changing containers), and 11b(5) (recording a lower price in the sales register). The common denominator is preventing the loss of merchandise without full payment  the protection of inventory.
Defendants argue that the shoplifting statute applies because the preparation of fraudulent refund receipts whereby money is issued in exchange for unreturned items constitutes under-ringing  an evil encompassed within the statute. N.J.S.A. 2C:20-11b(5). Mr. Forbes so defined it in his testimony. Defendants' contention fails both as a matter of statutory construction and common sense.
N.J.S.A. 2C:20-11a(9) provides that "`under-ring' means to cause the cash register or other sale recording device to reflect less than the full retail value of the merchandise." The purposeful under-ring "with the intention of depriving the merchant *526 of the full value thereof" is made shoplifting. N.J.S.A. 2C:20-11b(5). Construed in accordance with its plain meaning and in the context of the legislative purpose, these sections relate to sales, not returns. The act is concerned with inventory leaving the store, not merchandise being returned to the store. Moreover, as a matter of common sense, the entry of a fabricated return is an over-ring, not an under-ring. An under-ring improperly deflates the sale account; fictitious returns improperly inflate the return account. Thus we conclude that such an act would not constitute shoplifting.[1]
Moreover, even if the acts for which Ms. De Angelis was falsely charged had been shoplifting, the final paragraph of N.J.S.A. 2C:20-11e would not apply. To enable the merchant to deal with shoplifting, the statute affords protection from the types of civil liability which might otherwise inhibit efforts to protect the inventory. In successive paragraphs, merchants are afforded privileges for conduct which might otherwise constitute false imprisonment, false arrest, or malicious prosecution. N.J.S.A. 2C:20-11e. See Cooke v. J.J. Newberry & Co., supra, at 14-15. In the instant case, defendant was not charged with causing plaintiff's arrest but with false imprisonment and the last paragraph upon which amicus relies[2] deals only with malicious prosecution.
Because we find N.J.S.A. 2C:20-11 does not apply, it is unnecessary to consider whether the defendants' conduct was *527 within the privilege granted by the act. We would not, however, want our silence to be misinterpreted as concluding that such was the case. A shopkeeper may detain a suspect "in a reasonable manner for not more than a reasonable time." Here the conduct clearly exceeded the bounds of the statutory privilege.
Defendants' arguments as to a common law privilege is largely a reprise of its argument with respect to the shoplifting act, see, e.g., Restatement, Torts 2d, § 120A at 202-204 (1965), and similarly must fail. Defendants have shown no case upholding an employer's right to custodial interrogation of an employee accused of theft of money. Were such case law shown to us, we would decline to follow it. Such a rule would be a correlative to the shoplifting law. If the privilege to interfere with such a basic right as liberty of person is to be extended generally to the employer-employee relationship, it must be done by the Legislature. As the trial judge correctly noted, an employer has a right to question an employee, but not to imprison her. Such a detention without color of legal authority is false imprisonment. See Pine v. Okzewski, 112 N.J.L. 429, 431 (E. & A. 1934).
Defendants' remaining contentions are without merit. The evidence of plaintiff's innocence was not only relevant to damages (the effect of these traumatic events would clearly be greater on an innocent than a guilty person), but was highly probative of what took place during the custodial interrogation. Her false confession corroborated plaintiff's recitation of the interrogation's highly offensive nature. As defendants conceded in their brief, punitive damages are recoverable for conduct which willfully and wantonly disregards plaintiff's rights. See La Bruno v. Lawrence, 64 N.J. Super. 570, 574-575 (App.Div. 1960), certif. den. 34 N.J. 323 (1961). Defendants' conduct can well be characterized as "an intentional and deliberate act imbued with the character of outrage." See Stern v. Abramson, 150 N.J. Super. 571, 573 (Law Div. 1977). The testimony *528 of plaintiff, corroborated by that of Ms. Sherrer, if believed, fully established her detention. The argument that she was free to escape is frivolous. Nor can the damage award be found to be against the weight of the evidence or deemed excessive. What defendants treat lightly as "only ... periodic headaches and nightmares" were described by plaintiff, and accepted by the jury, as significant painful experiences. She also described the emotional feelings with which she was left. Wrongdoers are as liable for emotional scars as physical ones. Punitive damages are intended to deter as well as punish. See Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454 (1977). While $100,000 is a substantial sum, it is not likely that a nominal sum would have the deterrent effect the law envisions. It cannot be said that the jury was unreasonable in awarding this sum not only to punish defendants' egregious conduct, but to deter its repetition.
Affirmed.
NOTES
[1] Contrary to defendant's contention, the penal sections of the shoplifting statute must be strictly construed. See State v. Foglia, 182 N.J. Super. 12, 14-15 (App.Div. 1981), certif. granted 89 N.J. 436 (1982), app. dism. 91 N.J. 523 (1982). Their reliance on Cooke v. J.J. Newberry Co., supra, 96 N.J. Super. at 18 is misplaced. In that case we were not construing the penal sections but the civil immunity provisions.
[2] The last unnumbered paragraph of N.J.S.A. 2C:20-11e reads as follows:

A merchant who causes the arrest of a person for shoplifting, as provided for in this section, shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting.