260 N.J. Super. 165 (1992)
615 A.2d 663
CURTIS HORN AND EVELYN HORN, PLAINTIFFS-RESPONDENTS,
v.
VILLAGE SUPERMARKETS, INC., A NEW JERSEY CORPORATION, T/A SHOP-RITE, EDWARD PRICE AND FRED MILTEER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 6, 1992.
Decided November 10, 1992.
*168 Before Judges ANTELL, DREIER and SKILLMAN.
Robert F. Gold argued the cause for appellants (Gold, Haggerty & Adams, attorneys; Robert F. Gold on the brief).
Angelo R. Bianchi argued the cause for respondents (Angelo R. Bianchi, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendants Village Supermarkets, Inc., trading as Shop-Rite, and its security investigator, Edward Price, appeal from a malicious prosecution judgment entered in favor of plaintiffs, Curtis Horn and Evelyn Horn, his wife. The jury awarded compensatory damages of $40,000 to Mr. Horn and $5,000 to Mrs. Horn, punitive damages of $125,000 to Mr. Horn and $1,500 in legal fees. The jury returned a verdict for defendants on plaintiffs' additional claims of false arrest and false imprisonment.
The parties assert significantly different versions of the incident which led to the arrest of Mr. Horn at the Shop-Rite Supermarket on February 9, 1987. According to defendants, Mr. Price, the security officer, observed the plaintiff look around and put two twinpacks of vitamins into the pockets of his down jacket. Plaintiff then collected several more items in his shopping basket and went to the checkout line and paid for the merchandise in the basket. At that point, Mr. Milteer, *169 another security officer, was standing several persons behind plaintiff in the checkout line. Mr. Price had positioned himself outside of the windows opposite the checkout line and made eye contact with plaintiff. Plaintiff then walked quickly out of the line, through the persons waiting in line and dumped the concealed vitamin packets, one into a display container on one aisle and the other onto a shelf near the bleach on another aisle. Mr. Milteer and Mr. Price then moved in on Mr. Horn and detained him, using handcuffs part of the time, until the police arrived.
Plaintiff disputes this account and claims that he never had any merchandise concealed in his pockets. After paying for the merchandise in his basket, he asked the checkout person to hold his bag. He went back through the line of waiting persons at a quick pace because he had forgotten to get a bottle of bleach. While in the bleach aisle, he was asked to go with Mr. Price and Mr. Milteer for questioning.
Both plaintiff and defendants agree that at the time Mr. Horn was brought to a room for questioning he had no merchandise in his pockets. All agree that he was booked by the Maplewood Police and that this procedure entailed removing his clothes, fingerprinting and taking mug shots. Mr. Horn had no prior criminal record and was released on his own recognizance. He was acquitted of shoplifting in the ensuing municipal court trial.

I
Defendants assert that since the jury found that they were not liable for the false arrest or false imprisonment of Mr. Horn, they cannot be liable for maliciously prosecuting him for shoplifting under N.J.S.A. 2C:20-11e. The statute provides:
A law enforcement officer, or a special officer, or a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover the merchandise by taking the person into custody, may, for the purpose of attempting to effect recovery thereof, take the *170 person into custody and detain him in a reasonable manner for not more than a reasonable time....
* * * * * * * *
A merchant who causes the arrest of a person for shoplifting, as provided for in this section, shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting.
The above-quoted portions of the statute, upon which defendants rely, were interpreted by Judge Pressler in Carollo v. Supermarkets General, 251 N.J. Super. 264, 597 A.2d 1105 (App.Div. 1991), certif. denied, 127 N.J. 559, 606 A.2d 371 (1992). That case involved a similar summary judgment motion in a malicious prosecution and false arrest action. Specifically, the court determined that the immunity from subsequent liability for "a merchant who causes arrest" does not apply to:
a merchant who thereafter initiates criminal proceedings as a complaining witness. Indeed, such proceedings are beyond the self-help recovery of stolen goods which the arrest authorization of the statute is expressly designed to effect. See Cooke v. J.J. Newberry & Co., 96 N.J. Super. [9], 14-15 [232 A.2d 425 (App.Div. 1967)].
[Carollo, 251 N.J. Super. at 269, 597 A.2d 1105].
See also De Angelis v. Jamesway Dept. Store, 205 N.J. Super. 519, 525, 501 A.2d 561 (App.Div. 1985). The court in Carollo "conclude[d] therefore that the [arrest authorization of the] statute does not afford qualified immunity from a malicious prosecution action instituted by the merchant." 251 N.J. Super. at 269, 597 A.2d 1105.
The probable cause necessary to sustain a valid arrest is quite different from that necessary to prosecute. As stated in Carollo:
It appears, therefore, that ordinarily the same set of facts which constitute probable cause for a merchant to detain will also constitute probable cause for his initiating of criminal proceedings. Consequently as a practical matter, the probable cause which confers immunity from false arrest will ordinarily also defeat malicious prosecution claims. But this is not necessarily so. It is clearly possible that following an arrest based on sufficient probable cause, circumstances might ensue or facts might become known to the merchant which would so undermine the reasonableness of an initial belief in the patron's guilt as to make the subsequent signing of the complaint unjustified.

*171 [Id. at 270, 597 A.2d 1105 (emphasis added)].
In the case before us the jury verdict evidences that the jury believed that such a change in circumstances was present. During deliberations the jury asked for an answer to the question: "What point was he considered arrested and imprisoned, A; in the aisle, B; back room, C; taken to police station." The judge and both attorneys agreed the answer was "in the aisle." The next response from the jury was that it had reached a verdict. The jury verdict found no cause for the false arrest and imprisonment and yet found malicious prosecution. It is reasonable to surmise from this that the jury found probable cause to detain (arrest) because in the aisle Mr. Price and Mr. Milteer had "probable cause for believing" that plaintiff had "willfully concealed unpurchased merchandise" and that defendant's employees could "recover the merchandise by taking [plaintiff] into custody." N.J.S.A. 2C:20-11e. By store policy defendants did not conduct searches in the aisle, and since they needed to take the plaintiff into custody in a room off the main shopping area to determine whether or not he had any concealed merchandise that he had not discarded, the jury found that the defendants had probable cause in the aisle to detain him. Therefore, the jury found the defendants not guilty of false arrest or false imprisonment.
It appears that the jury found against defendants on the malicious prosecution claim on the grounds that once the security officers found no concealed merchandise on Mr. Horn, they should have released him. Therefore, defendants at that point had no probable cause to prosecute Mr. Horn. On the facts of this case, and consistent with the reasoning in Carollo, the jury could properly find liability for malicious prosecution but no liability for false arrest or false imprisonment.

II
Defendants allege that the trial judge should have charged the jury that it could infer that a person who conceals *172 unpurchased merchandise intends to deprive the merchant of possession, and that finding of such merchandise on the person of a shopper permits the inference of purposeful concealment. N.J.S.A. 2C:20-11d provides:
Presumptions. Any person purposely concealing unpurchased merchandise of any store or other retail mercantile establishment, either on the premises or outside the premises of such store or other retail mercantile establishment, shall be prima facie presumed to have so concealed such merchandise with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof, and the finding of such merchandise concealed upon the person or among the belongings of such person shall be prima facie evidence of purposeful concealment; and if such person conceals, or causes to be concealed, such merchandise upon the person or among the belongings of another, the finding of the same shall also be prima facie evidence of willful concealment on the part of the person so concealing such merchandise.
Since the facts were undisputed that Mr. Horn had no concealed merchandise "upon [his] person or among [his] belongings," ibid, failing to charge the permissive inferences did not amount to reversible error "clearly capable of producing an unjust result." R. 2:10-2.

III
Defendants next claim that the trial judge should not have permitted proof that plaintiff had been acquitted of the municipal court charges. Malicious prosecution arising out of a criminal prosecution requires proof:
(1) that the criminal action was instituted by the defendant against the plaintiff, (2) that it was actuated by malice, (3) that there was an absence of probable cause for the proceeding, and (4) that it was terminated favorably to the plaintiff. Prosser, Law of Torts, § 119 at 835 (4th ed. 1971); Evans v. Jersey Central Power, etc., Co., 119 N.J.L. 88 [91, 194 A. 144] (E. & A. 1937). The plaintiff must establish each element. Upon failure to prove any one, the cause must fail. Each element is separable from the others, although evidence of one may be relevant with respect to another. For example, proof of lack of probable cause may be appropriate evidence from which to infer but not necessarily establish malice.
[Lind v. Schmid, 67 N.J. 255, 262, 337 A.2d 365 (1975). See also Shoemaker v. Shoemaker, 11 N.J. Super. 471, 478-479, 78 A.2d 605 (App.Div. 1951)].
The fourth element described in Lind, that the criminal proceeding terminated favorably to the plaintiff, is a necessary *173 element of the cause of action for malicious prosecution. In the case before us the municipal court judge specifically found as follows:
THE COURT: It seems to me on this matter that the security people jumped the gun if nothing else. Even if the Court were to adopt the version of this incident as expressed by the two witnesses for the complaining party there is, while not necessarily the necessity for an alleged defendant to leave the premises. In this case by their own testimony without anything being said to the defendant, the defendant even if he had the vitamins in his pocket, apparently of his own volition went back and returned them.
So at the most it cannot be said that there was a completed offense of shoplifting. It's even doubtful whether that can be regarded as an attempt. There are possibilities of forgetfulness or any other number of possibilities. And no court has a right to convict anybody on the basis of possibilities.
Since there is a reasonable doubt there will be finding of not guilty.
The Law Division did not receive into evidence the municipal court judge's foregoing findings of fact. However, the jury was informed that the municipal court proceeding had terminated favorably to plaintiff. Because this determination was an element of the malicious prosecution count in Superior Court, the Law Division did not err in allowing its introduction.
The action of the municipal court did not bind the jury on the issue of probable cause. In Lind v. Schmid, supra, the Supreme Court determined that the municipal court conviction in that case only "raise[d] a rebuttable presumption of probable cause." Id., 67 N.J. at 264, 337 A.2d 365. The introduction of the acquittal in the case before us had little evidential value. It raised no presumption of a lack of probable cause to prosecute Mr. Horn. It was merely "some evidence;" additional evidence of the circumstances was required. Shoemaker v. Shoemaker, 11 N.J. Super. at 479, 78 A.2d 605. Nevertheless here there was substantial proof of the surrounding circumstances. The Law Division judge might have explained the different standards of proof applied in the municipal court criminal trial, and the Law Division Civil action.[1] There was, however, no request *174 for such a charge, nor was there an objection to this portion of the charge as delivered. See R. 1:7-2. The absence of such a charge was therefore not reversible error. R. 2:10-2.

IV
Defendant Price next argues that he was deprived of his right to counsel when at the morning break and over lunch he was instructed not to speak to his attorney. The record shows:
THE COURT: All right. 10 after 11. Please everybody be back by 25 after 11. All right. Just because of the nature of the cross examination and I know we would not have interrupted it. Mr. Gold, you are directed not to speak with your client.
* * * * * * * *
THE COURT: All right. We'll take a luncheon recess then. 1:30 please for everyone.
THE COURT: Continue with the instruction Mr. Bianchi has just reminded. Request that you (Indiscernible .. mumbled word(s)[)] this cross examination. That there be no discussion between you and Mr. Price please. We'll maintain the integrity of this record.
MR. BIANCHI [Plaintiff's Counsel]: Your Honor, my main question went not to counsel but to Mr.  discussions with Mr. [Milteer].
THE COURT: Mr. [Milteer] and your partner. I think everybody should have their lunch separate. This is  this is getting very touch and go Mr. Gold.
MR. GOLD [Defendant's Counsel]: All right Your Honor. I mean, they'll have lunches separate and alike. I'm not permitted to stay  I thought you said  indicated I could not lunch with my partner?
THE COURT: I didn't say you couldn't.
MR. GOLD: I'm sorry.
THE COURT: I don't want any  I don't want either of you talking to either of them or either of them talking together.
MR. GOLD: That will be fine. Thank you Your Honor.
Both of these instances occurred during the cross-examination of defendant Price.
*175 Ordinarily cross-examination occurs immediately following direct examination, and there is no intervening time period. In these two instances, the trial judge was particularly conscious of the fact that the two defendant security guards had been sequestered and apparently had changed their stories on various days of the trial. The trial judge legitimately attempted to limit their conferences in order to preserve the truthfinding function of cross-examination. This is not reversible error. See Perry v. Leeke, 488 U.S. 272, 283-284, 109 S.Ct. 594, 601-602 102 L.Ed.2d 624, 635 (1989) (finding both no federal constitutional right to consult with counsel during a short recess and that the determination rests within the discretion of the trial court); see also State v. Carroll, 256 N.J. Super. 575, 593, 607 A.2d 1003 (App.Div.), certif. denied, 130 N.J. 18, 611 A.2d 656 (1992) (finding no infringement on defendant's right to counsel where the court instructed him not to discuss his testimony with counsel during short recess). A trial judge has the ultimate responsibility to control the trial in the courtroom and is given wide discretion to do so. We see no abuse of the judge's discretion.

V
Defendants also assert that plaintiff was mistakenly permitted to testify about the anxiety he felt while the case was pending against him in municipal court. Plaintiffs urge that a lay witness may testify regarding mental anguish and nervousness, citing State v. Walker, 216 N.J. Super. 39, 45-46, 522 A.2d 1021 (App.Div.), certif. denied, 108 N.J. 179, 528 A.2d 10 (1987) (no medical expert testimony needed to establish the physical or emotional abuse suffered by rape victim). Defendants argue that Mr. Horn's anxiety was "not within the common experience and knowledge of the average juror, as well as not within the aforementioned clear exception [of State v. Walker, supra]." Further, defendants allege that the trial judge committed reversible error because:

*176 Mr. and Mrs. Horn both were permitted, over objection, to testify that Mr. Horn will no longer patronize supermarkets or department stores as a result of the alleged occurrence. The causal relationship of his residual fears, anxieties or nervousness to the incident at Shop-Rite mandated medical expert testimony.
The primary justification for the use of an expert in the first place is the "relative helplessness of the average juror in dealing with a subject not of common knowledge." Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85, 168 A.2d 423 (App.Div. 1961); see also State v. Kelly, 97 N.J. 178, 209, 478 A.2d 364 (1984). Such expert testimony in fact should not be permitted unless it concerns a subject matter which is so distinctively related to some science, profession, business or occupation as to be "beyond the ken of the average juror." State v. Kelly, 97 N.J. at 208, 478 A.2d 364.
A person of average intelligence and ordinary experience could understand the anxiety caused by being arrested and the fear of returning to stores once a person was accused of shoplifting under the circumstances of this case. An average juror in a case such as this would clearly have the "common judgment and experience [necessary to] form a valid judgment" concerning the facts in issue, without expert testimony. Butler v. Acme Markets, Inc., 89 N.J. 270, 283, 445 A.2d 1141 (1982). We see no error in permitting plaintiffs to testify regarding the effect of this incident upon them.

VI
Lastly, defendants claim that the verdict was excessive and that punitive damages should not have been awarded at all. The trial judge explained the type of malice which must be present for the jury to award punitive damages:
Now I have already spoken to you about the malice necessary to support the claim for malicious prosecution. Such malice as I said means the intentional doing of a wrongful or unlawful act without just cause or excuse. That kind of malice would not justify an award for punitive damages. However, if in addition to finding that kind of malice you also find by a preponderance of the credible evidence that the criminal complaint was initiated by defendants with actual malice or actual ill will or with a willful intention of injuring plaintiff, or that the criminal complaint was instituted under circumstances of oppression, *177 wantonness or a reckless disregard of the plaintiff's rights or such a wanton feeling as to impute a bad motive, then you have the right to award punitive damages in such sum as in your judgment is justified in the proper administration of justice as punishment for the malicious wrong done to the plaintiff.
Accord Nappe v. Anschelewitz, 97 N.J. 37, 49-50, 477 A.2d 1224 (1984); Egan v. Erie R. Co., 29 N.J. 243, 254-255, 148 A.2d 830 (1959); De Angelis v. Jamesway Dept. Store, supra, 205 N.J. Super. at 527, 501 A.2d 561; Enright v. Lubow, 202 N.J. Super. 58, 76, 493 A.2d 1288 (App.Div. 1985), certif. denied, 104 N.J. 376, 517 A.2d 386 (1986); King v. Patrylow, 15 N.J. Super. 429, 433, 83 A.2d 639 (App.Div. 1951).
In denying defendants' motion for remittitur, the trial judge summarized the proofs sustaining the award:
I had in this Court and had the opportunity to observe all of the witnesses, Mr. Horn and the two Defendants  individual Defendants. Mr. Horn presented himself to this jury as a person who was agonizing over the first couple of hours of the arrest. It was humiliating. He was taken through the store. He was striked [sic] in front of the store and out by police officers in handcuffs then totally demoralized.
Albeit it might be, some of us think you become hardened, because of what we see in the halls here, you can't use that as a test Mr. Gold [defendant's counsel]. The situation is this is a businessman who was working hard to support a family, getting bonded, doing government work. Who now goes flashing through his mind I have a record. Is it going to jeopardize my livelihood, that of my family, my children, et cetera. He gets taken down to the jail, stripped of his clothes, strip searched, put into prison garb, mug shot and then ultimately released and returned, and then caused to go all of this agony for the 70 some odd days.
And the Municipal Court is saying as here, I have to say that the appearance of [defendant] Mr. Price [the security officer] in this Courtroom both times cocky, arrogant, bigot, just out to get the world. And no matter you say, there wasn't one thing about his conduct that could any way ever be condoned under the law. The jury having the opportunity to observe this individual and his cocky attitude on this witness stand, was unbelievable.
And quite frankly I don't think that there was anything shocking about this verdict, and quite frankly if I have to react to it I'd say maybe it was shocking in that it wasn't enough. Because quite frankly with what Shop-Rite allowed this individual to do, the latitude of making decisions as to certain people if they stole something he could let them go, other certain people he couldn't let go. The conduct was so outrageous that Mr. Horn had owned the Village Supermarkets as a result of this verdict, I wouldn't have set it aside. The motion is denied.
*178 The standard for our setting aside a verdict already sustained by the trial judge is high. A jury's constitutional duty to render a verdict should not be interfered with unless the overall amount is "against the weight of the evidence so as to constitute a miscarriage of justice...." Dolson v. Anastasia, 55 N.J. 2, 12, 258 A.2d 706 (1969). This court must decide whether the total amount awarded to Mr. and Mrs. Horn went so wide of the mark as to shock the conscience. See Baxter v. Fairmont Food Co., 74 N.J. 588, 596, 599, 379 A.2d 225 (1977); see also De Angelis v. Jamesway Dept. Store, supra, 205 N.J. Super. at 528, 501 A.2d 561 (determining that $100,000 for anxiety caused by store security personnel was not excessive).
Plaintiffs established by ample evidence that Shop-Rite, as well as the individual security officers acting in furtherance of Shop-Rite's interests, would be responsible for paying any punitive damages. See King v. Patrylow, supra, 15 N.J. Super. at 434, 83 A.2d 639. The actual wealth of the defendants is clearly relevant on a claim for punitive damages. See Herman v. Sunshine Chemical, 257 N.J. Super. 533, 544, 608 A.2d 978 (App.Div. 1992); Belinski v. Goodman, 139 N.J. Super. 351, 357, 354 A.2d 92 (App.Div. 1976); Neigel v. Seaboard Finance Co., 68 N.J. Super. 542, 555, 173 A.2d 300 (App.Div. 1961).[2] In this case the jury may well have set the amount of punitive damages at $125,000 to deter such conduct in the future. See Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 454, 375 A.2d 652 (1977). As noted at the outset, Mr. Horn was awarded $40,000 and Mrs. Horn was awarded $5,000 in compensatory damages. The jury also awarded $125,000 in punitive damages. Under the circumstances of this case, this verdict, which may *179 deter such future conduct on the part of Shop-Rite, does not shock this court's conscience and is affirmed.
Affirmed.
NOTES
[1] The judge might have pointed out to the jury that Mr. Horn's acquittal indicated only that the municipal judge did not find plaintiff guilty beyond a reasonable doubt. (The strong language quoted infra, used by the Law Division judge to describe the security guard's demeanor may explain the absence of this charge). The jury, however, might have determined by a preponderance of the evidence that Mr. Horn had hidden the vitamins on his person with an intent to steal them. If the security personnel had probable cause to believe this, even if the items had been returned, the municipal prosecution might have been warranted.
[2] The factor has even been incorporated in the Product Liability Act, N.J.S.A. 2A:58C-5d(4). The Act sets forth a procedure for a jury determination of punitive damage claims which has been commended for application in other types of punitive damage claims. Perth Amboy Iron Works, Inc. v. American Home Assur. Co., 226 N.J. Super. 200, 227, n. 23, 543 A.2d 1020 (App.Div. 1988), aff'd o.b., 118 N.J. 249, 571 A.2d 294 (1990).