Affirmed on the appeal; reversed on the cross-appeal.

915 A.2d 79

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT v.
ADAM GOODMANN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 8, 2006—Decided February 2, 2007.

Before Judges KESTIN, PAYNE and GRAVES.

*Adam Goodmann,* appellant, filed a pro se brief.

*John L. Molinelli,* Bergen County Prosecutor, attorney for respondent (*Brandy Brentari Galler,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

Defendant, Adam Goodmann, appeals from his conviction for the disorderly persons offense of shoplifting, in violation of *N.J.S.A.* 2C:20–11b(1), imposed in municipal court and affirmed by a judge of the Superior Court following a trial *de novo* on the prior record. On appeal, defendant, an attorney, raises the following arguments on his own behalf:

A. The Requisite Statutory Elements Were Not Met.

B. The Equities Weigh Heavily in Favor of the Defendant.

C. Equitable Estoppel Bars Prosecution of the Defendant in This Case.

D. The Unclean Hands Doctrine Bars Prosecution of the Defendant in This Case.

We reverse.

Testimony at trial in municipal court was offered for the State by John Evans, an assistant manager at a Walgreens store located in Fair Lawn. Evans testified that, on March 7, 2005, defendant appeared at the store to pick up film that had been re-developed after defendant expressed dissatisfaction with the initial result because the date did not appear on the pictures. Defendant was

given the photographs and told that the charge would be $9.75, but he refused to pay that amount.[1] When Evans stated that failure to pay or to relinquish possession of the pictures would result in a charge of shoplifting, defendant responded angrily: "Do what you can." Defendant then wrote his name and address on a piece of paper, along with the statement that we "will settle this in court," and proceeded out of the store with the pictures in hand. Evans or the store's manager thereupon called the police and filed a shoplifting complaint.

Defendant testified that when he arrived at the Walgreens store, he had every intention of paying for the photographs. However, he had requested double prints, and he received only a single set at a price different from that advertised. This discrepancy led to a billing dispute. As defendant described it:

> [W]hat took place was a disagreement as to what the price should be since [Walgreens] hadn't performed in accordance with what I had requested. The photos I was picking up[,] they weren't anyone else's photos, they were my own photographs. I had taken them with my own camera. They were mine. . . .
>
> I cooperated with the police. I did nothing to disrupt the store, or to be disorderly. I simply had a . . . billing dispute with the store. And I spoke to the employees at the store to have that resolved, and they . . . weren't willing to discuss it to resolve it.

Defendant then offered for identification the advertisement that he claimed showed the price for the two sets of photos, as he understood it to be at the time that he dropped off the film, and he testified that the price was $5.99. Thus, defendant claimed that by being charged $9.75 for a single set of prints, he was not being given what he had requested, and the price was doubled. Although defendant acknowledged that he had never paid for the photographs, he stated he had not done so only because there was no resolution of the billing dispute.

---

[1] Although the transcript is unclear on this point, Evans may have offered to permit defendant to take the negatives, but not the positive prints, without cost; an offer that defendant refused. There was no testimony whether defendant could have realized the benefit of his alleged bargain with Walgreens if he had taken the negatives elsewhere to have prints produced from them.

Defendant stated that he was advised of the complaint against him by two police officers who came to his door. Although the officers reported that Walgreens would drop the complaint if defendant paid the full price that the store sought, defendant refused, stating that the price was excessive. Defendant testified that, thereafter, he called the manager of the Walgreens in an effort to resolve the dispute, but that the manager "wouldn't cooperate with me in trying to resolve the billing dispute, and ultimately hung up on me."

In closing argument, defendant contended that the action against him constituted a misuse of the shoplifting statute to transform a billing dispute into a criminal matter, and that neither the statute's elements nor its purposes was met by the State's proofs. The State conceded the existence of a billing dispute, but contended that defendant "intended to deprive the merchant of possession of the photographs without paying the merchant the full retail value thereof," and that his conduct met the statutory requirements.

As the court was delivering its opinion, defendant recognized that he had failed to move into evidence the flyer that he contended established the lower price for the photographs, and he sought to do so. Following an objection by the State, the court declined to permit the admission of the evidence, noting that the trial had ended and that defendant, as an attorney, should have been more vigilant in protecting the record. The court then concluded that the disorderly persons offense of shoplifting had been proven, and it imposed a mandatory sentence upon defendant of ten days of community service, along with a fine of $150, restitution of $9.75, and applicable fees and assessments.

The conviction was affirmed upon appeal to the Law Division. In a comprehensive written opinion, the Law Division judge found that "defendant's conduct of removing photographs from Walgreens, without payment, falls within the purview of the shoplifting statute which the municipal court properly applied." The

judge rejected defendant's position that the matter constituted a contractual dispute between a customer and the store, observing:

> After hearing all the facts, [the municipal court judge] determined that defendant was either to pay for the photographs or take the negative[s] without payment. It is patently obvious from the facts that the defendant was unsatisfied with ... either the quality of the photographs or the price. [The municipal court judge] found that regardless of the dispute, defendant was guilty of shoplifting. This court finds that defendant was not entitled to leave the store with merchandise being offered for sale without making payment because defendant felt he was being overcharged.

We agree with defendant that his billing dispute with Walgreens over the cost of its film developing services should not have been resolved by resort to the shoplifting provisions of the criminal code. We note, however, that our determination of this issue is premised upon our construction of the language and intent of the shoplifting statute. Our decision should not be interpreted as condoning defendant's conduct or as addressing, and rejecting, the applicability of any other provision of the criminal code to that conduct.

*N.J.S.A.* 2C:20–11b provides that shoplifting shall consist, in relevant part, of the following act:

> (1) For any person purposely to take possession of, carry away, transfer or cause to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise or converting the same to the use of such person without paying to the merchant the full retail value thereof.

A "store or other retail mercantile establishment" is statutorily defined as "a place where merchandise is displayed, held, stored, or sold or offered to the public for sale," *N.J.S.A.* 2C:20–11a(2); "merchant" is defined in *N.J.S.A.* 2C:20–11a(4) as "any owner or operator of any store or other retail mercantile establishment"; and "merchandise" is defined in *N.J.S.A.* 2C:20–11a(3) as "any goods, chattels, foodstuffs or wares of any type and description, regardless of the value thereof."

In our view, the shoplifting statute is inapplicable to the conduct at issue or, at very least, its applicability is fatally ambiguous. The relevant portion of the shoplifting statute applies

to "merchandise" offered for sale by "any store or other retail mercantile establishment." We have held in the context of the immunities afforded to merchants pursuant to the shoplifting statute that the statute's exclusive concern is with "preventing the loss of merchandise without full payment—the protection of inventory." *DeAngelis v. Jamesway Dept. Store*, 205 *N.J.Super.* 519, 525, 501 *A.*2d 561 (App.Div.1985). The photographs that gave rise to the dispute in this case were not inventory or "merchandise" as that word is statutorily defined and commonly understood.

 Merchandise consists, in the main, of the goods that stock the shelves of a mercantile establishment and are offered for sale. These photographs were not goods "displayed, held, stored or offered for sale" by Walgreens. *N.J.S.A.* 2C:20–11b(1). As defendant testified, the photographs were his, taken by his own camera. Nor, as the result of the retention by defendant of an ownership interest in his work product, could the photographs have been offered for sale to the public. "Merchandise" connotes an item of value to the merchant—something salable. Defendant's photographs were neither. Courts addressing the issue of the measure of damages for lost film have observed that the photographic prints that an amateur anticipates receiving have no market value, but merely their value to the photographer. *See, e.g., Miller v. Newsweek, Inc.*, 675 *F.Supp.* 872, 876 (D.Del.1987) (discussing principle in commercial context); *Mieske v. The Bartell Drug Co.*, 92 *Wash.*2d 40, 593 *P.*2d 1308, 1311 (1979) (movie film depicting family, sent to be spliced onto larger reels); *Sarkesian v. Cedric Chase Photographic Labs., Inc.*, 324 *Mass.* 620, 87 *N.E.*2d 745, 746 (1949). *See generally* Charles C. Marvel, Annotation, *Liability of One Undertaking to Develop or to Otherwise Process Already Developed Photographic Film for Its Loss or Destruction*, 6 *A.L.R.*4th 934 (1981). No "merchandise" was involved in the transaction at issue in this case.

 Additionally, Walgreens was not acting as a "merchant" operating a "retail mercantile establishment" when it contracted to develop defendant's film. Although Walgreens' film development

facilities were located within its retail mercantile store, the activities performed there constituted a service for which defendant contracted.[2] In the circumstances, Walgreens' position was that of a bailee, and the transaction was a bailment for services. *Collins v. Click Camera & Video, Inc.*, 86 *Ohio App.*3d 826, 621 *N.E.*2d 1294, 1297 (1993); *Morgenstern v. Eastman Kodak Co.*, 569 *F.Supp.* 474, 476 (N.D.Ohio 1983); *Carr v. Hoosier Photo Supplies, Inc.*, 441 *N.E.*2d 450, 453 (Ind.1982); *Mieske, supra*, 593 *P.*2d at 1312; *Sarkesian, supra*, 87 *N.E.*2d at 746; *cf. also Rajkovich v. Alfred Mossner Co.*, 199 *Ill.App.*3d 655, 145 *Ill.Dec.* 726, 557 *N.E.*2d 496, 498 (1990) (discussing damage to drawing submitted for reproduction). The fact that service functions were offered in conjunction with traditional mercantile activities does not transform the service into an activity encompassed within the shoplifting statute. Defendant's conviction for shoplifting was thus unsupported, because the State failed to meet its burden of demonstrating that defendant's conduct met the elements of the offense.

 We recognize the breadth of the statutory definition of "merchandise," which includes "any goods, chattels, foodstuffs or wares" and makes no reference to the merchant's possessory interest in the item. *N.J.S.A.* 2C:20–11a(3). We also recognize that the shoplifting statute prohibits the removal of "merchandise" that is "displayed, held [or] stored" as well as "merchandise" that is "offered for sale." *N.J.S.A.* 2C:20–11b. We are, however, unwilling to stretch these ambiguous terms to somehow encom-

---

[2] Film development is often categorized as a service without discussion. *See, e.g., Quick v. Wal–Mart Stores, Inc.*, 441 *F.*3d 606, 609 (8th Cir.2006) (in wrongful discharge case, employer characterized employee's offer of discounts on film development after practice had been discontinued as theft of services); *Valenti v. Qualex, Inc.*, 970 *F.*2d 363, 369–70 (7th Cir.1992) (characterizing claim arising from destruction of film by photo processor as constituting a defective service); *but see In re Tax Appeal of Fuji Photo Film Hawaii, Inc.*, 79 *Hawai'i* 503, 904 *P.*2d 517 (1995) (finding photo processing company's large-scale activities, for tax purposes, should be considered as "manufacturing," not a "service").

pass defendant's conduct, finding that such an exercise would be contrary to the legislature's likely intent in passing the shoplifting statute. Because the statute is penal in nature, we must strictly construe it. *State v. Foglia*, 182 *N.J.Super.* 12, 14–15, 440 *A.*2d 16 (App.Div.1981), *certif. granted,* 89 *N.J.* 436, 446 *A.*2d 160, *appeal dismissed,* 91 *N.J.* 523, 453 *A.*2d 848 (1982). Moreover, as we stated there:

> It has long been settled that "[b]efore a man can be punished, his case must be plainly and unmistakably within the statute." *State v. Caez*, 81 *N.J.Super.* 315, 319 [195 *A.*2d 496] (App.Div.1963). Penal statutes "are not to be regarded as including anything which is not within their letter as well as their spirit, which is not clearly and intelligently described in the very words of the statute, as well as manifestly intended by the legislature." *State v. Cannizzaro,* 133 *N.J.L.* 383, 384 [44 *A.*2d 354] (E. & A.1945).
> [*Ibid.*]

■ As a final matter, we note that *N.J.S.A.* 2C:20–11b(1) requires the State to demonstrate beyond a reasonable doubt that defendant "purposely" took possession of the "merchandise" with the intention of converting the same to his own use without "paying to the merchant the full retail value thereof." The record reflects no evidence, on defendant's part, of the statutorily defined purposeful conduct. *See N.J.S.A.* 2C:2–2b(1). The State acknowledged in its closing argument that a billing dispute existed with respect to the value of Walgreens' services. Testimony was offered by defendant of a value less than that claimed by Walgreens, and documentary evidence in support of that contention was marked for identification.[3] Moreover, defendant's testimony

---

[3] The municipal judge misapplied the discretion afforded her under *N.J.R.E.* 611(a) in refusing to permit defendant to introduce into evidence, after the parties had rested, the flyer that allegedly disclosed an offer of developing services at half the cost claimed by Walgreens. The document, which defendant mistakenly failed to offer in evidence, was significant to an ascertainment of the truth of Walgreens' allegation that defendant had refused to pay the full value for the developed photographs and was relevant to defendant's intent in refusing to pay the amount sought by Walgreens. Moreover, the State was not prejudiced by the late introduction of the exhibit into evidence, since it had been previously marked for identification and was available as a subject for cross-examination during the testimony of witnesses at trial. That cross-examination did not

was uncontested at trial that, after the billing dispute arose, he provided contact information to Walgreens and offered to participate in the resolution of the dispute. The issue of the "full retail value" of Walgreens' services was never explicitly resolved. However, there was no evidence that, upon an establishment of that value, payment by defendant would have been refused.

In sum, we discern nothing to support the State's contention that this minor billing dispute over the cost of film development services offered by Walgreens, occurring between store personnel and a customer who offered identifying information and expressed a willingness to participate in resolution of the dispute, constituted a violation of the shoplifting statute warranting prosecution as a criminal matter. In light of our resolution of this issue, we decline to address defendant's remaining arguments.

Defendant's disorderly persons conviction is reversed; fines and penalties imposed are vacated.

demonstrate the inapplicability of the price allegedly set forth in the flyer to the transaction at issue.