**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2341-16T1

GINA M. CAMPO,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

BRIAN G. ACKEN,

      Defendant-Respondent/
      Cross-Appellant,

and

REGINA ACKEN,

      Defendant.

_____

> Argued September 13, 2018 – Decided September 24, 2018
>
> Before Judges Fisher and Hoffman.
>
> On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-0459-14.
>
> Kathleen M. DiGiovanni argued the cause for appellant/cross-respondent (Levinson Axelrod, PA, attorneys; Kathleen M. DiGiovanni, on the brief).

David G. Lucas, Jr., argued the cause for respondent/cross-appellant (Wolf, Helies, Spaeth & Lucas, PA, attorneys; David G. Lucas, Jr., on the brief).

PER CURIAM

In this verbal threshold case, a jury found plaintiff Gina Campo did not sustain any permanent injury proximately caused by the automobile collision at issue. After the trial court denied her motion for a new trial, plaintiff filed this appeal, arguing the cumulative effect of several erroneous evidentiary rulings resulted in a miscarriage of justice. Defendant Brian G. Acken filed a cross-appeal, challenging a trial court evidential ruling. Finding no miscarriage of justice, we affirm and find it unnecessary to the address the issue raised in defendant's cross-appeal.

I

On March 22, 2013, defendant rear-ended plaintiff's vehicle. Plaintiff did not feel pain at the time of the accident; however, she recalled feeling "achy" later that night. Despite waking up the next morning with neck pain, a headache, and bruising, plaintiff attended her nephew's birthday party, instead of seeking medical attention. On the second day after the accident, plaintiff went to a local hospital emergency room, where she received a prescription for pain medication and a recommendation to "follow-up with a doctor."

The next day, plaintiff saw a doctor, who ordered an MRI that revealed plaintiff had two herniated discs of her cervical spine. The doctor referred plaintiff to a chiropractor, who treated her three times a week for six months.

Plaintiff found the chiropractic treatment ineffective, and in September 2013, began treatment with Dr. Michael O'Hara, a board certified pain management physician. Dr. O'Hara reviewed the MRI, interpreting it as revealing "a large amount of muscular spasm" and two herniated discs, which he concluded were caused by the automobile accident. Dr. O'Hara recommended plaintiff receive a medial branch block,[1] which his partner administered on October 23, 2013. Plaintiff testified the injection provided her with some relief, but the pain eventually returned.

In April 2014, plaintiff had a consultation with Dr. Nirav Shah, a board certified neurosurgeon. After he examined her and reviewed her MRI, Dr. Shah diagnosed plaintiff with, among other things, cervical radiculopathy and two herniated discs.

On Dr. O'Hara's recommendation, plaintiff underwent a second medial branch block in May 2014; however, this procedure provided only "minimal"

---

[1] According to Dr. O'Hara, a medial branch block involves "injecting some anesthetic and some steroid" near the nerves that go to facet joints located "on both sides of the spine."

A-2341-16T1

relief, which lasted only "a week or two." Dr. O'Hara then recommended plaintiff undergo a radiofrequency ablation.[2] In June 2014, plaintiff underwent the ablation procedure, which provided her "significant relief" for seven to eight months, but the pain eventually returned. In August 2015, plaintiff underwent a cervical facet joint injection, but reported only a ten percent reduction in pain after that procedure.

At trial, plaintiff presented the police officer who responded to the accident scene as her first witness. According to the officer, defendant "said he looked down at directions and by the time he looked up, he didn't realize [plaintiff's vehicle] was stopped and rear ended the back of [plaintiff's] car." On cross-examination, the officer testified that his police report reflected that plaintiff sustained "[n]o injury" in the accident and received "[no] medical treatment."

Plaintiff then presented testimony from her mother and from a close friend, who both testified that plaintiff never had any problems or complaints regarding her neck before her auto accident. In addition, they both recalled

---

[2] Dr. O'Hara described radiofrequency ablation as involving the placement of a needle in the same location as the medial branch block, but instead of injecting medicine, the tip of the needle is heated to "knock out . . . pain fibers."

 A-2341-16T1

observing plaintiff in discomfort at the birthday party she attended the day after the accident, and telling her she needed to see a doctor.

Plaintiff also presented the videotaped de bene esse testimony of Dr. Shah, limited by the court to the observations and opinions expressed in the office note he prepared following plaintiff's sole visit to this office. Following a pretrial motion, the court struck those portions of Dr. Shah's testimony where he stated his opinion that plaintiff had sustained a permanent injury in the subject auto accident.

After plaintiff testified, the jury heard testimony from Dr. O'Hara. He stated the subject accident caused plaintiff's injuries because she "had no pain prior to the accident," and, "her mechanism of injury was consistent with what was found on the MRI and how she responded to [the] facet injections." He further noted that plaintiff's MRI "show[ed] no other degenerative changes that would explain her current pain." Dr. O'Hara opined plaintiff's injuries were permanent.

The defense presented only one witness, Dr. Arthur Berman, who testified in a de bene esse deposition taken during trial, after the jury already viewed the de bene esse deposition of Dr. Shah. Dr. Berman, an orthopedic surgeon, completed a medical examination of plaintiff in July 2014, nearly one month

after plaintiff's radiofrequency ablation. According to Dr. Berman, plaintiff's herniated discs were the result of a pre-existing condition and not her automobile accident. He further opined plaintiff did not suffer from radiculopathy, but rather her pain resulted from "chronic changes," and not a "single traumatic event." Finally, he opined plaintiff did not suffer from any residual or permanent injury as a result of her automobile accident, and testified – over objection – that tobacco use and a sedentary lifestyle can contribute to the development of degenerative spinal conditions.

Before closing statements, the trial judge granted plaintiff's motion for a directed verdict on the issue of defendant's liability; consequently, the only issue before the jury was whether plaintiff sustained a permanent injury, and if so, her damages. The jury returned a five-to-one verdict, finding plaintiff did not "sustain a permanent injury as a result of the March 22, 2013 automobile accident."

II

Pursuant to Rule 4:49-1(a), a trial court shall order a new trial when, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." See Caldwell v. Haynes, 136 N.J. 422,

431 (1994). A trial court should not interfere with a jury verdict unless the verdict is clearly against the weight of the evidence. Horn v. Village Supermarkets, Inc., 260 N.J. Super. 165, 178 (App. Div. 1992). A trial court's decision on such a motion "will not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1.

"The general rule as to the admission or exclusion of evidence is that '[c]onsiderable latitude is afforded a trial court in determining whether to admit evidence, and that determination will be reversed only if it constitutes an abuse of discretion.'" State v. Kuropchak, 221 N.J. 368, 385 (2015) (alteration in original) (quoting State v. Feaster, 156 N.J. 1, 82 (1998)); see also State v. Jenewicz, 193 N.J. 440, 456 (2008) (stating "the [abuse of discretion] standard" is applied "to a trial court's evidentiary rulings under" N.J.R.E. 702). Importantly, we will not disturb a trial court's judgment unless the court's ruling "was so wide of the mark that a manifest denial of justice resulted." Kuprochak, 221 N.J. at 385–86 (quoting State v. Marrero, 148 N.J. 469, 484 (1997)); see also Brenman v. Demello, 191 N.J. 18, 31 (2007).

A.

Plaintiff first argues the motion judge erred in striking portions of Dr. Shah's de bene esse testimony that addressed the permanency of plaintiff's

conditions. Specifically, plaintiff challenges the judge's conclusion that Dr. Shah's testimony addressing permanency constituted an opinion "outside the scope of his report." We find no abuse of discretion.

Dr. Shah treated plaintiff on only one occasion, April 22, 2014. In his office summary notes – the only report he issued – Dr. Shah wrote, "Permanency cannot be determined until all conservative measures are completed including the rhizotomy and consideration for surgery." However, at his de bene esse deposition, Dr. Shah testified plaintiff's injuries were permanent and the result of her automobile accident. Those statements, in conjunction with the doctor's concession that he had not reviewed plaintiff's medical records subsequent to the April 22, 2014 office visit, clearly demonstrate the doctor's testimony contradicted his office notes. Accordingly, we affirm on this issue.

### B.

Plaintiff next argues the trial judge erred in permitting Dr. Berman to testify that tobacco use and sedentary lifestyles "can help cause" degenerative spinal conditions. Because Dr. Berman failed to offer this opinion in his report, plaintiff argues the trial judge should have excluded this testimony.

The judge ruled the challenged testimony of Dr. Berman admissible under N.J.R.E. 703, finding that the testimony of Dr. Shah regarding tobacco use and

sedentary lifestyles, and plaintiff's own testimony regarding these issues, provided a proper basis for Dr. Berman to comment on these matters.

N.J.R.E. 703 provides,

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Our Supreme Court has held N.J.R.E. 703 "addresses the foundation for expert testimony." Townsend v. Pierre, 221 N.J. 36, 53 (2015). The Court noted N.J.R.E. 703

> mandates that expert opinion be grounded in facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.
>
> [Ibid. (citation and quotation marks omitted).]

Plaintiff's argument lacks persuasion. Her expert, Dr. Shah, maintained articles on his website correlating tobacco use and sedentary lifestyles, with degenerative disc disease. Without objection, defendant questioned Dr. Shah about that literature during cross-examination, and the relationship of those relevant factors to plaintiff's condition. On cross-examination, plaintiff

confirmed she smokes a pack of cigarettes per day, does not exercise regularly, and spends thirty hours per week at work sitting. As such, Dr. Berman's opinion was based on evidence adduced at trial per N.J.R.E. 703.

C.

Plaintiff contends the court erred by allowing defense counsel to elicit from Dr. Shah that plaintiff's attorney referred her to him. She asserts that Dr. Shah's testimony was impermissible because he is a treating physician, and further claims the testimony violated N.J.R.E. 504, which governs the attorney-client privilege.

The motion judge initially barred the testimony, finding it impermissible from a treating physician. Later, however, plaintiff sought to have Dr. Shah qualified as both a treating physician as well as an expert witness, which the judge allowed. Consequently, the judge then permitted the referral testimony, stating,

> Counsel, [Dr. Shah] is not just a treating physician[,] because you asked him to be qualified as an expert and I'm allowing it. So once that happens[,] he needs to be on the same footing as . . . defendant. . . . I wouldn't allow [the referral testimony] if he's just being considered as a treating physician because I think that it's an undue prejudice. But if he's testifying as an expert in this case, then it would be unduly prejudicial to . . . defendant for the jury not to hear it.

We decline to find the testimony prejudicially impacted plaintiff. The record reflects the judge appropriately considered the relevant factors, and determined that because plaintiff offered Dr. Shah as both a treating physician and an expert witness, barring the referral testimony would unduly prejudice defendant. Accordingly, the judge's determination was not "so wide [of] the mark that a manifest denial of justice" occurred. Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)). Moreover, plaintiff's attempt at recasting the issue in terms of attorney-client privilege lacks persuasion as she fails to cite any authority supporting the proposition that the physician's testimony constituted an attorney-client communication.

D.

Plaintiff next argues the trial judge erred in permitting defendant's attorney to note, during his opening statement, that the testimony the jury would hear from Dr. Shah contains "no opinion" regarding "the issue of permanency" of plaintiff's injuries. Citing Bender v. Adelson, plaintiff argues defendant knew the jury was unaware the court barred Dr. Shah from testifying about permanency, and therefore "played on that ignorance and implied an untruth."

11

187 N.J. 411, 433 (2006) (holding "untrue statements or inferences" may constitute undue prejudice).

Defendant's counsel made the following statement during opening remarks: "[A]nd listen to [Dr. Shah's] testimony on the issue of permanency. There is no opinion." At a sidebar conference, the judge permitted defendant to proceed, but stated he would "remind the jury that any arguments from [counsel] . . . is just argument and not to be considered as evidence." After the sidebar conference, defense counsel stated, "So, you're not going to hear any opinion from Dr. Shah on permanency. So permanency is going to be between Dr. Berman and Dr. O'Hara."

Plaintiff fails to demonstrate that defense counsel's statement was "clearly capable of producing an unjust result." R. 2:10-2. Not only did plaintiff present another doctor – Dr. O'Hara – to testify about permanency, but defense counsel's revised remark following the sidebar conference accurately reflected that Dr. Berman and Dr. O'Hara were the only experts who would offer permanency opinions at trial. Moreover, the judge provided an appropriate jury instruction, advising that "[w]hat attorneys say in their opening statements is not evidence." Accordingly, we affirm on this issue.

E.

Finally, plaintiff argues the jury's verdict was against the weight of the evidence. We are not persuaded.

As with many personal injury cases, the case under review became a battle of experts. Dr. Berman testified that plaintiff had "pre-existing discogenic disease." While acknowledging she sustained "a cervical strain, muscular injury" in the accident, he concluded her injury "fully resolved with no residuals." Moreover, plaintiff's credibility was likely undermined when she testified her car sustained significant damage, when – according to the trial judge – the "photos did in fact show minimal damage."[3] Further, plaintiff did not seek medical care until two days following the accident, instead choosing to attend her nephew's birthday party. Accordingly, we conclude the record reflects sufficient evidence to support the jury's verdict. In so holding, we need not address defendant's protective cross-appeal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] The record lacks the subject photographs.