96 N.J. Super. 9 (1967)
232 A.2d 425
LENORE ROSEMARIE COOKE, PLAINTIFF-APPELLANT,
v.
J.J. NEWBERRY AND CO., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1967.
Decided July 6, 1967.
*12 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Robert S. Feder argued the cause for appellant.
Mr. George P. Moser, Jr. argued the cause for respondent (Messrs. Moser, Roveto & McGough, attorneys).
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Plaintiff's action is described in the pretrial order as one "for false arrest and false imprisonment." After both sides rested, the trial judge directed the entry of judgment in favor of defendant and plaintiff appeals.
The broad outline of plaintiff's case (details of which will be supplied, infra, as needed) is as follows: plaintiff admits that she left defendant's store in Bergen Mall, Paramus, with a pair of stretch pants, for which she had not paid, in a Stern's shopping bag. She was accosted outside the store by one Earabino, a Newberry security officer, who refused to accept payment for the garment and asked her to return to the store with him. She accompanied him to an office in the store where she was interrogated for a period and asked to sign a certain paper (described later) which she refused to do. Then Earabino called the Paramus police, who took her into custody. Earabino signed a complaint which charged plaintiff with larceny. She was held for the grand jury, indicted for larceny, tried before a jury and acquitted. This action followed.
We hold that, even though Earabino signed a complaint for larceny and she was indicted and tried on that charge, this case is governed by N.J.S. 2A:170-97 to 101, the Shoplifting Act. Defendant is responsible, if at all, only for that which happened before the police took plaintiff into custody. Since the action is not one for malicious *13 prosecution, defendant could not be liable for the length or nature of plaintiff's detention by the police, or for the actions of the authorities while she was detained. Earl v. Winne, 14 N.J. 119, 128 (1953); Genito v. Rabinowitz, 93 N.J. Super. 225, 228-229 (App. Div. 1966); Prosser on Torts (3d ed. 1964), § 12, pp. 61-62; Restatement, Torts 2d, § 37, comment (b); § 45A, comment (b).
By the same token defendant is not liable for the action of the authorities and the grand jury in proceeding against plaintiff for larceny under N.J.S. 2A:119-2 instead of as a shoplifter, under N.J.S. 2A:170-98. It is the function of the authorities to select the type of prosecution. Once the citizen tells the authorities truly what the facts are, the rest is up to them. Certainly defendant had no control over the prosecutor or the grand jury. In any event, we hold that even if Earabino himself chose to make the larceny complaint instead of one under the Shoplifting Act, defendant would not retroactively lose the benefit of the Act.
We turn, therefore, to the Shoplifting Act.
Section 99 of the act provides:
"Any person willfully concealing unpurchased merchandise of any store or other retail mercantile establishment, either on the premises or outside the premises of such store or other retail mercantile establishment, shall be prima facie presumed to have so concealed such merchandise with the intention of converting the same to his own use without paying the purchase price thereof within the meaning of section 1 of this act, and the finding of such merchandise concealed upon the person * * * shall be prima facie evidence of willful concealment; * * *."
Section 100 provides:
"A law enforcement officer, or a special officer, or a merchant, who has probable cause for believing that a person has willfully concealed unpurchased merchandise and that he can recover such merchandise by taking the person into custody, may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for not more than a reasonable time. Such taking into custody by a law enforcement officer or special officer or merchant shall not render such law enforcement officer, *14 special officer or merchant criminally or civilly liable in any manner or to any extent whatever.
Any law enforcement officer may arrest without warrant any person he has probable cause for believing has committed the offense of shoplifting as defined in section 1 of this act.
A merchant who causes such arrest as provided for in this section, of a person for shoplifting shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting."
Plaintiff argues that the facts show she was "arrested," because she "had good cause to believe that she would be forcibly restrained from leaving the room in which she was held had she tried to do so." For the purposes of this opinion we accept this as true. However, there can be no question but that, under the cited section of the statute, Earabino had the right to detain her. Earabino had been informed by the salesgirl that plaintiff had not paid for the stretch pants, and he had seen her place them in the Stern's shopping bag.
The critical question in the case is whether plaintiff's proof was sufficient to go to the jury to establish that the detention was for "more than a reasonable time." We think it was not sufficient on this score and therefore the trial judge's action was not erroneous.
What is a reasonable time depends basically upon what the law authorizes a merchant to do. N.J.S. 2A:169-3, which antedates the Shoplifting Act, permits any person to "apprehend without warrant or process any disorderly person" for any offense committed in his presence. This alone authorized Earabino to arrest plaintiff. State v. Ferraro, 81 N.J. Super. 213 (Law Div. 1964). N.J.S. 2A:170-99 et seq. was designed to enlarge and add to that right so far as merchants are concerned. First, it permits a merchant to take a person into custody upon probable cause, even if he has not actually seen the shoplifting. Second, he may detain the person for the sole purpose of recovering his goods, and may then let him go  a right which he may not have *15 had before. Rothstein v. Jackson's Coral Gables, Inc., 133 So.2d 331 (Fla. D. Ct. App. 1961); Annotation 86 A.L.R.2d 435 (1962). But, third, he need not let the person go. He may summon the police (either before or after he recovers his merchandise, or if he does not attempt to recover it at all) in which case he may detain the person while awaiting their arrival.
The first paragraph of section 100 deals only with the merchant's taking of the suspect into custody, and the custody spoken of in that paragraph is only for the purpose of recovering the goods. The word arrest does not appear in that paragraph. The second and third paragraphs of section 100 plainly contemplate that after getting (or failing to get) the merchandise, the merchant may (as often he should) call the police. If he does, the section says (second paragraph) the responding policeman may arrest without warrant on probable cause (i.e., on what he learns from the merchant) in which case (third paragraph) the "merchant who causes such arrest as provided for in this section, of a person for shoplifting shall not be criminally or civilly liable in any manner and to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting." (Emphasis supplied).
Here Earabino took plaintiff into custody, and then he decided not to accept the stretch pants or their price but to cause her to be arrested. He had the legal right to do so  the only question is whether the jury would have had the right to say he took too long in doing it. We think not.
From what point to what point is the time to be calculated? It is not denied that Earabino called the police at 8:37 P.M. and that they arrived at 8:50. We hold that defendant may not be charged with any delay beyond 8:37.
Plaintiff testified she did not "recall exactly" how long she was in Earabino's office before the police arrived, but it was "roughly a half hour." Earabino said it was 35 to 40 minutes.
*16 Plaintiff's attorney said in his opening that plaintiff was accosted outside the store by Earabino at 8:10. Earabino testified it was "approximately 8:10." Plaintiff said she was stopped "somewhere between say 7:00 and 7:30 vaguely * * *." On cross-examination she admitted "I am not sure of the time," and "I don't think it was after eight."
The burden of proving that she was detained for an unreasonable length of time was upon plaintiff. Plaintiff presented her case on the theory that all or much of the two to three hours she was held by the police in police headquarters was to be charged against plaintiff, but, as we have said, that is not so. We hold that the pertinent time was, at most, from the time she was stopped (about 8:10) to 8:37, when the police were called. We hold that plaintiff's estimate that she was in Earabino's office "roughly a half hour" was her only credible approximation of the time, whereas her vague approximations of the time when she was stopped were too indefinite to go to the jury (since she had the burden of proof) to justify a finding that she was stopped as early as 7:30. Furthermore, her own account of her activities from the time she left home at about 6 P.M. to the time she was "arrested" made it well nigh impossible for her to have been stopped as early as 7:30. She testified she left her home in Ridgefield Park at about 6 P.M.; it took her 20 minutes to get to the Mall. First she parked in Stern's Shopping Area "but closer to Route 4"; then she went up "the stairs leading to the overpass * * * to Korvette's * * * on the other side of the highway [Route 4] * * *." At Korvette's she bought men's shirts, and a pair of "peds" for herself; then she went into a "different section" of Korvette's and bought groceries. She carried the "bundles" back to her car and then drove her car "closer to Stern's and Newberry's parking areas." Then she went into Newberry's and looked at shoes; finding none she liked, she went to look at the shoes displayed at Stern's, then at those in Beck's shoe store, and then at those "across the street from Beck's [at] another store," but she made no purchases. She *17 returned to Newberry's and there she claimed she bought and paid for some makeup and a cup and saucer. Then she went back to Stern's for cards, writing paper and envelopes. Then she "remembered they had another shoe department on the lower level" in Stern's, so she went there and looked. She made no purchase there and decided "to return to Newberry's to see the original pair of shoes that I thought I might care for." She re-entered Newberry's, but went first "to get some lingerie in the lingerie department." There the salesgirl gave her the fatal stretch pants. With the pants in her hand, she went to the infant's hat counter. She testified that there "I had to rummage through a table and I didn't know exactly what size to get so I had to look through and finally chose one * * *." However, she changed her mind and did not buy the hat. She said, "I may have looked around at the other infant's wear and I decided I better get back to the shoes * * *." She testified she then went back to the shoe department and tried on the shoes, but did not buy them because they did not fit "comfortably enough." It was then that she left the store and was stopped by Earabino.
In short, and especially against this background, her guess that she was stopped at 7:30 was too nebulous  a mere scintilla of evidence  that she was indeed stopped at that hour, and not at about 8:10 as her attorney and Earabino said, and it could not have satisfied her burden of proof that it was earlier than about 8:10.
There was no need to detain defendant for more than a few minutes to recover the stretch pants or its price, for plaintiff admitted that she had the merchandise and offered to pay for it. However, Earabino apparently was suspicious of her because of her actions and because she carried a large, easily opened handbag (described as being like a doctor's bag) with a handle which left her hands free. The question was whether to take the merchandise or the price and let her go, or whether to cause her arrest. That, in turn, depended on whether (1) she was telling the truth, (2) she *18 had taken any other merchandise from Newberry's, or (3) this was the first time she had walked out of a store with items not paid for. We think a merchant has the right to consider such things before he decides whether to call the police. Such matters cannot conveniently be determined on the street. Furthermore, extended discussion on the street would be embarrassing to the suspect. Hence, there was no impropriety in Earabino's asking plaintiff to go to his office. There, when he examined the contents of her bag, he found items from Stern's and McCrory's with price tags attached. Earabino recorded plaintiff's name, address and description and checked to see if she had a record. She had none. Then he filled out a form in which she acknowledged that she had taken the stretch pants "without making payment therefore * * * which [she] intended to keep for [her] own use." There is no explanation in the record as to why Newberry asks for these forms to be signed, but apparently the use of such forms is not unusual. Delp v. Zapp's Drug & Variety Stores, 238 Or. 538, 395 P.2d 137 (Sup. Ct. 1964). Plaintiff refused to sign the form. Earabino then called the police. (After the police came, she did sign it  under police persuasion or duress, she said.) Under all of the foregoing circumstances, we think the judge was justified in holding, as a matter of law, that her detention from about 8:10 to 8:37 was not for an unreasonably long time.
The shoplifting problem is a serious one, and we think the act should be given a construction reasonably calculated to carry out its purpose. That purpose has been described as being "to protect the merchant from substantial shoplifting losses, and to safeguard the innocent customer * * *." Annotation, 90 A.L.R.2d 811 (1963). And see State v. Hales, 256 N.C. 27, 122 S.E.2d 768, 90 A.L.R.2d 804, 809 (Sup. Ct. 1961). In Delp, supra, it was held that a detention for about 30 minutes, under facts quite similar to those at bar, was reasonable as a matter of law. See also Collyer v. S.H. Kress Co., 5 Cal.2d 175, 54 P.2d *19 20 (Sup. Ct. 1936), in which the detention was for about 20 minutes.
We have examined plaintiff's other arguments but find them without substantial merit. Affirmed.
LABRECQUE, J.A.D. (dissenting).
While I am in agreement with the law applicable to the present controversy as set forth in the opinion of the majority, I find myself unable to concur in their conclusion that the judgment of dismissal was proper. The Shoplifting Act authorized detention of the plaintiff for "not more than a reasonable time." What would be a reasonable length of time in a given case would depend upon the evaluation of a number of factors, as the opinion of the majority properly points out. Their evaluation is a task committed to the trier of the facts. Here plaintiff and Earabino were far from being in agreement as to whether she was detained at all and, if so, when she was detained and what transpired during her detention. Two things, however, are certain: she admitted that she had not paid for the stretch pants and offered to do so; her shopping bag revealed nothing further which had come from defendant's store. While there were a number of additional facts in the case which cast suspicion upon plaintiff, their effect upon the issue of the reasonableness of plaintiff's detention was a fact question.
Further, it is far from clear that the trial judge dismissed because of the lack of evidence sufficient to make the reasonableness of plaintiff's detention a fact question in view of his oral holding that:
"The fatal deficiency in the plaintiff's case is their [sic] failure to prove unlawful detention. It is the burden of the plaintiff to prove the absence of legal justification or the absence of probable cause on the part of the defendant's security officer for the detaining of the plaintiff. Under the circumstances I am going to grant the motion."
I would reverse and remand for a new trial.