**Deborah A. LUCAS, a/k/a Deborah Lewis, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10863.**

District of Columbia Court of Appeals.

Argued April 27, 1977.

Decided Jan. 24, 1980.

Rehearing and Rehearing En Banc Denied April 16, 1980.

---

Stuart H. Gitlitz, Washington, D. C., appointed by this court, for appellant. William J. Genego and Jerry Kristal, Georgetown Univ. Law Center, Washington, D. C., entered an appearance.

Mary Ellen Abrecht, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, John A. Terry and Charles H. Anderson, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and MACK, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

Appellant was arrested for, and convicted of, attempted petit larceny. D.C.Code 1973, §§ 22–103 and –2202. On appeal, she contends that the search that resulted in her arrest violated the Fourth Amendment. After careful consideration, we conclude that the search was constitutional. We find appellant's other contentions of error also to be without merit, and accordingly affirm the conviction.

## I

The search to which appellant objects was initiated by a scanning of the air by microwaves emitted by a sensormatic detection system in Woodward & Lothrop's downtown store. The microwaves seek out and react to "live tags" which are attached to store merchandise in such a manner that they cannot be removed except by the use of a special tool. The tags are made of hard plastic about three inches long and are removed by the store cashier when payment is made.

But if items from the store with the tags still attached are taken past a cash register the microwave sensors, reacting to the tag, activate an alarm. "Special policemen," who have authority to arrest pursuant to D.C.Code 1973, §§ 23–581 and –582 are trained to monitor the equipment and stand by ready to act when the alarm goes off.

In the instant case, the sensormatic alarm rang after appellant left the fourth floor carrying merchandise in a paper bag. Simultaneously, the device activated a recording which said "Pardon us. Please return to the salesperson from whom you made your purchase. Apparently they failed to remove the inventory control tag." Promptly, two special policewomen approached appellant and identified themselves. As they began to inquire if appellant had receipts, appellant's daughter began to scream, "Mommy, you said you weren't going to steal anymore. Mommy you said you put the pants back."[1] When the screaming subsided, one of the policewomen asked to see appellant's bag and found store merchandise with tags still attached. No receipts were in the bag.

## II

■ Before reaching the Fourth Amendment question of reasonableness, we must first determine whether there was sufficient state action to bring the Fourth Amendment into play at all. For there to be sufficient state action, (a) the special police must have been acting as agents of the state, and (b) the involvement of the special police in the use of the sensormatic device must have been significant. Here, the two policewomen were private detectives hired by the store as described above. However, because of the nature of their duties, we hold that the special police here were acting as agents of the state. Although such officers are for some purposes considered to be private employees, *NLRB v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 429, 67 S.Ct. 1274, 1281, 91 L.Ed. 1575 (1946); *United States v. McDougald*, D.C. App., 350 A.2d 375 (1976), "when they are performing their police functions, they are acting as public officers and assume all the liabilities attaching thereto." *NLRB v. Jones & Laughlin Steel Corp., supra.* See also *Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964).

■ This, however, does not end the inquiry, for the trial court concluded that even if the special police were officials of the state, they played "no role whatsoever in the search by the sensormatic machine," as they acted only after the alarm was set off. However, we do not find that there is evidence to support that finding. Rather, the evidence indicated that they were significantly involved in the use of the sensormatic device and received training in its operation. The device is used day after day, week after week. Clearly, the special police knew it was being used, indeed they were trained to monitor it and did monitor it on this occasion. If official involvement will be found where a policeman stands by silently while a search is conducted, *Moody v. United States*, D.C.Mun.App., 163 A.2d 337 (1960); *United States v. Mekjian*, 505 F.2d 1320, 1327–28 (5th Cir. 1975), then surely the sort of ongoing cooperation which is apparent here must also be charged to the state. *Cf. Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (state involvement found as the result of a "sym-

---

1. Although the daughter's outburst was excluded at the trial on the merits, it was admitted at the hearing on the motion to suppress.

biotic relationship" between the government and a private party). On these facts, we must hold that the Fourth Amendment is applicable.

### III

Having held that the state was involved in the use of the sensormatic device, we must next decide whether the search here violated appellant's Fourth Amendment rights. We conclude it did not.

■ The starting point of our inquiry is whether the aggrieved person had a right of privacy in respect to the area violated. *United States v. Holmes*, 537 F.2d 227, 230 (5th Cir. 1976) (bumper beeper on car). It is generally recognized, of course, that it is reasonable for persons to assume that their right of privacy attaches also to parcels and packages in their possession. *Arkansas v. Sanders*, 442 U.S. 753, 761, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538 (1977).

However, it is not so clear that persons can always assume that the right to privacy extends to articles of contraband in their possession. When the Fifth Circuit concluded that it was "constitutionally permissible" for authorities at a port of entry to place an electronic beeper in a package of heroin entering the country, which later led to the appellant and to his arrest, the court quoted with approval from *United States v. Moore*, 562 F.2d 106, 111 (1st Cir. 1977), as follows:

[P]ossessors of [contraband] have no legitimate expectation of privacy in substances which they have no right to possess at all. . . ." [*United States v. Pringle*, 576 F.2d 1114, 1119 (5th Cir. 1978).]

In a case where bank officials had hidden a small transmitter in a package of special-

ly marked "bait money" which was taken by bank robbers the police by monitoring the signals were able to locate the robbers and to find the money in the back seat of their car. No issue of a Fourth Amendment violation was raised. *United States v. Bishop*, 530 F.2d 1156 (5th Cir. 1976).

■ We need not resolve in this case, however, the question of whether or not one may have a reasonable expectation of privacy as to a live tag in her possession belonging to the store and still attached to store merchandise since we find that, even assuming such a right, the search here was so limited as to be reasonable and not a violation of the constraints of the Fourth Amendment.[2]

■ The test for determining the reasonableness of a search as laid down by the Supreme Court is ". . . balancing the need to search against the invasion which the search entails." *Camara v. Municipal Court*, 387 U.S. 523, 536–37, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967); *United States v. Bell*, 464 F.2d 667, 674 (2 Cir. 1972).

■ In *Terry*, the Court said: ". . . The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. *Warden v. Hayden*, 387 U.S. 294, 310, 87 S.Ct. 1642, 1652, 18 L.Ed.2d 782 (1967) . . . ." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). This recognizes a closely related requirement, applicable to electronic searches as well, that to be reasonable the search must be as limited as possible. *United States v. Albarado*, 495 F.2d 799 (2d Cir. 1974).

The cases most closely in point are those dealing with the use of the magnetometer at airports to detect weapons, ammunition or explosives, in an effort to curtail hijacking.[3] Although the courts have invariably

---

2. Although it was argued that there was a sign in the store warning customers of the presence of an electronic detection system, we find nothing in the record to that effect. We note, however, that it has been held that automobile drivers on a highway are not entitled to a warning that they are approaching a radar

speed monitoring station. *Cross v. District of Columbia*, D.C.App., 292 A.2d 794 (1972).

3. In *United States v. Albarado, supra* at 803, the court said:

Even the unobtrusive magnetometer walk-through is a search in that it searches for and discloses metal items within areas most inti-

concluded that the magnetometer search is constitutional, there has been no uniform view as to the proper manner in which to reach that result. Nearly all of them emphasize the overriding governmental interest, *i. e.*, the seriousness of the threat to the lives of so many innocent people, the rapid spread of hijacking, and the ineffectiveness of usual security and investigative countermeasures. *See* cases cited in *United States v. Albarado, supra* at 801 n.1; and *United States v. Edwards*, 498 F.2d 496, 497 n.1 (2d Cir. 1974).

The governmental interest here is quite well known. The widespread practice of shoplifting long ago reached such large proportions as to be a matter of great concern to merchants who have been suffering substantial losses which are necessarily passed along to the customer in increased prices. It also has become a matter of concern to law enforcement agencies which have been unable to curtail the increasing number of violations. The need for an effective detection system is demonstrated not only by the general prevalence of the crime, but by the historic ineffectiveness of other methods of prevention and detection. *See generally May Department Stores Co. Inc. v. Devercelli*, D.C.App., 314 A.2d 767, 772 (1973); *Cooke v. J. J. Newberry & Co.*, 96 N.J.Super. 9, 232 A.2d 425 (1967); *State v. Hales*, 256 N.C. 27, 122 S.E.2d 768, 771–72 (1961); Annot., 90 A.L.R.2d 811 (1963).

In examining the extent of the invasion in light of the governmental interest, we

find that the intrusion of this sensormatic device is minimal for, as we shall see, it meets the test of being as limited as possible. It is quite different from, and far less intrusive, than the magnetometer used at airports which can be triggered not only by weapons, but by a wide variety of other metal objects not infrequently carried by innocent law-abiding citizens. *See United States v. Albarado, supra.*

Unlike any technique heretofore passed upon by this court, this device does not search or scan generally for items in which the subject has a proprietary interest. It reveals nothing about the subject or his belongings other than whether he is carrying store merchandise with live tags beyond the point where he should have paid for the merchandise and had the tags removed.[4]

It is the preciseness of the sensormatic equipment, not in terms of detecting what it searches for but, more importantly, in terms of not detecting anything it is not searching for that makes its use reasonable.[5]

Weighing the nature of the threat, the failure experienced in combatting the threat by use of the usual security or investigative countermeasures with the unusually limited nature of the intrusion, we hold that the search here by this sensormatic device was not unreasonable.[6] Accordingly, the judgment of conviction is

*Affirmed.*

mate to the person where there is a normal expectation of privacy. [Citation omitted.]
We view the cases where searches and arrests were upheld after police dogs sniffed the odor of marijuana or other drugs emitted from one's package or luggage to pose a somewhat different issue than here, where the microwave beam penetrates the bag or package searching for a live tag. *See e. g., United States v. Solis*, 536 F.2d 880 (9th Cir. 1976); *United States v. Bronstein*, 521 F.2d 459 (2d Cir. 1975); *United States v. Fulero*, 162 U.S.App.D.C. 206, 498 F.2d 748 (D.C.Cir.1974).

**4.** According to the only expert witness to testify, if the sensormatic device is activated while someone is passing the cash register, the chances the alarm was activated by a live tag are 100%.

**5.** In this respect, the sensormatic device is much less intrusive than a frisk. It could even be considered less intrusive than visual surveillance.

**6.** The role of the special police in accosting the appellant to identify themselves, asking if appellant had receipts and looking into her bag, does not affect the result we reach here. The activation of the alarm by so selective a device no doubt gave them probable cause to search the bag, but before they could react, the accusatory screams of appellant's daughter removed any question there may have been as to the officers' right to examine the contents of the shopping bag.

MACK, Associate Judge, concurring in part, dissenting in part:

I endorse the holding of the majority that there was sufficient state action in this case to bring into play the operation of the Fourth Amendment. I have difficulty, however, with holding that the limited nature of the intrusion alone, when balanced against the governmental interest in detecting shoplifting, justifies our sanctioning this search as reasonable.

I begin with the general rule, that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). *Accord, Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55 (1971); *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *Botts v. United States,* D.C.App., 310 A.2d 237, 239 (1973). Of course the traditional exceptions provide little leeway to evaluate the type of search with which we are concerned. Here, it is the microwave sensors that search. The intrusion, albeit limited, is made at a time when there is no probable cause to arrest. The intrusion, unlike that countenanced in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is not tied to the protection of life. As the majority has noted, the cases most closely in point are those dealing with the use of the magnetometer to detect weapons at airports. Although the courts have invariably concluded that the magnetometer search is constitutional (*see* cases cited in *United States v. Edwards,* 498 F.2d 496 n.1 (2d Cir. 1974) and *United States v. Albarado,* 495 F.2d 799, 801 n.1 (2d Cir. 1974) ), there has been no single view as to the rationale for this result. The cases have balanced the invasion involved against the need to prevent the crime of hijacking

and its consequential danger to life to justify the search. *United States v. Edwards, supra* at 500. *Accord, United States v. Albarado, supra* at 806. By contrast, while shoplifting is a costly crime to the public, the retailer and the consumer alike, the need for detection by a sensormatic device is less compelling than the need to prevent hijacking by magnetometer.

However, in my view, there is one established exception to the rule of *Katz v. United States, supra,* that operates to validate searches by sensormatic devices under prescribed circumstances. Thus, it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte, supra. Accord, Zap v. United States,* 328 U.S. 624, 628–30, 66 S.Ct. 1277, 1279–1280, 90 L.Ed. 1477 (1946); *Davis v. United States,* 328 U.S. 582, 594–99, 66 S.Ct. 1256, 1262–1264, 90 L.Ed.2d 1453 (1946). For consent to constitutionally justify a warrantless search, it must be "freely and voluntarily given." *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). *Accord, Schneckloth v. Bustamonte, supra,* 412 U.S. at 222, 93 S.Ct. at 2045. The question of whether a search is voluntarily consented to must be answered by looking at the "totality of all the circumstances" attending such a search. *Id.* at 227.

The totality of circumstances standard does not impose an undue burden (of showing consent) upon a retailer who chooses to use a sensormatic device. The posting of signs in the shopping area is a simple matter. Once such signs are posted, the entry of a shopper into the proscribed area may be taken as an implied consent to a voluntary search. Such reasoning finds support in magnetometer cases. *See United States v. Edwards, supra; United States v. Albarado, supra; United States v. Lopez,* 328 F.Supp. 1077, 1083 (E.D.N.Y.1971).[1] "The

---

1. In *United States v. Lopez, supra,* the following signs in English and Spanish were posted at the airport boarding gates:

AIRCRAFT HIJACKING IS A FEDERAL CRIME PUNISHABLE BY DEATH

intrusiveness of the airport frisk is . . limited by foreknowledge of it." *United States v. Albarado, supra* at 807.

I would hold that a search by a sensormatic detection system is constitutionally acceptable under circumstances where voluntary consent is implicit or express.[2]

CARRYING CONCEALED WEAPONS ABOARD AIRCRAFT IS PUNISHABLE BY PRISON SENTENCES & FINES

PASSENGERS AND BAGGAGE SUBJECT TO SEARCH

Surely, it is not an undue burden to require mercantile establishments using this device (if they have not previously done so) to post similar signs in their shopping areas, to wit:

SHOPLIFTING IS A CRIME PUNISHABLE BY IMPRISONMENT

SHOPPERS AND THEIR BELONGINGS WILL BE SUBJECT TO SENSORMATIC SEARCH

2. I express no opinion as to whether the totality of circumstances in this case would support implied consent.