Paul C. Wilson, Judge
Deborah Barkley (“Barkley”) sued McKeever Enterprises, Inc. (“Price Chopper”), alleging various torts arising out of her 46-minute detention at Price Chopper for suspected shoplifting. At the close of the evidence, Barkley elected to submit only her claims for false imprisonment and battery to the jury. The jury found for Price Chopper on both claims. Barkley appeals, and the judgment is affirmed.

Background

On May 24, 2009, Barkley went to Price Chopper in Independence. While shopping, she took various items (e.g., notebooks, a book light, toothpaste, and batteries) from.the shelves and placed them in a reusable shopping bag she carried next to her purse. In her other hand, Barkley carried other empty reusable shopping bags. Barkley’s husband, who also went shopping with her, placed various items in a grocery cart. When they met to check out, Barkley’s husband unloaded the cart onto the conveyor belt while Barkley walked past the register and handed the *832 empty reusable bags to an employee for use in bagging their purchases. Barkley continued to carry the bag concealing her other items next to her purse. She made no effort to pay for the items in that bag, and they had not been scanned along with her husband’s purchases. When the other items were paid for, Barkley headed for the exit.
Two loss prevention employees had been watching Barkley on Price Chopper’s surveillance system. When they saw Barkley head for the exit without paying for the items in the bag next to her purse, they stopped her. They confiscated the bag containing the unpurchased items, escorted her to the store’s security office, and told her she was being detained on suspicion of shoplifting. Barkley’s husband waited for her in the nearby customer service area.
Inside the security office, Barkley and the two male loss prevention employees were joined by a female employee in accordance with Price Chopper’s policy for female shoplifting suspects. Barkley was told to sit on a bench in the office while the employees searched her purse, itemized and photographed the merchandise Barkley had concealed in the reusable shopping bag, and began preparing their report. Approximately four minutes after Barkley was first detained, the employees summoned the police when they determined that the price of the items in Barkley’s bag exceeded the store’s threshold for prosecution.
As the employees were processing the items and preparing their report, Barkley stood and approached two of the employees from behind. The third employee, who could see her approaching, told Barkley to stay seated on the bench. Barkley refused and continued to approach the other employees. When they turned and saw her, one of them moved to handcuff her. Barkley resisted and, during the scuffle, she was pushed up against a file cabinet. When the employee cuffed one of her hands and started to handcuff the other hand behind her back, Barkley complained that this would be too painful. The employee acquiesced and handcuffed Berk-ley’s hands in the front instead. He told Barkley to return to the bench, but she refused again.
At this point, one of the employees reached out to guide Barkley back to the bench. She evaded this employee and ran for the door. Barkley was able to open the door because her hands were cuffed in front of her. But, before she could get the door open enough to escape, the employees caught up to her. While one of them pushed the door shut and tried to pull Barkley’s hands from the door handle, the other employee knocked Barkley’s legs out from under her. With Barkley on the floor, the employees were able to move her handcuffs to the back so she would not be able to use her hands again. Then, they attempted to help Barkley up and over to the bench. She refused their assistance, however, and remained sitting on the floor until the employees completed their report.
When the report was finished, the employees moved Barkley’s handcuffs back to the front and, again, tried to help her off the floor. Barkley did not resist this time, and the employees assisted her to the bench. Approximately eight minutes later, or about 46 minutes after Barkley was first detained near the store’s exit, the police arrived to arrest Barkley and escort her from the store. She was charged with . shoplifting in Independence Municipal Court but later was acquitted of this charge.
Barkley sued Price Chopper for actual and punitive damages arising out of her detention in the store. She alleged that:
*833 (1) Price Chopper had been negligent in supervising its loss prevention employees; (2) Price Chopper committed malicious prosecution by instigating criminal charges that ended in her favor; and (3) Price Chopper’s employees invaded her privacy and committed assault, battery, and false imprisonment. Price Chopper pleaded that the merchant’s privilege and section 537.125[1] protected it from all liability to Barkley for the acts alleged.
In October 2012, the case was tried to a jury. At the close of the evidence, Barkley abandoned all of her claims except false imprisonment and battery. These were submitted to the jury, together with Price Chopper’s affirmative defense to each count. The jury found for Price Chopper on both counts. Barkley sought a new trial on the grounds that the trial court erred in submitting an affirmative defense to the charge of battery and that the trial court erred in admitting and excluding certain evidence. Her motion was overruled. Barkley appeals, and this Court has jurisdiction. See Mo. Const, art. V, § 10.
The Court rejects Barkley’s argument that the merchant’s privilege does not extend to claims of battery and her argument that the privilege ends when the merchant’s property is recovered. Instead, a merchant is privileged to detain a person — in a reasonable manner and for a reasonable period — if the merchant has reasonable suspicion or probable cause to believe that person is shoplifting. The merchant is entitled to recover the property but may continue the detention to determine whether the person actually was shoplifting and — if so — to summon the police and instigate criminal proceedings. This privilege is not limited to claims of false imprisonment. Instead, as long as the detention is conducted in a reasonable manner and for a reasonable time, the privilege protects the merchant from all liability to the person detained, civil or criminal, including liability for an assault or battery committed to effectuate the detention. Accordingly, the judgment in favor of Price Chopper is affirmed.

Analysis

The privilege of a merchant to detain a suspected shoplifter has long been recognized in Missouri. At first, the privilege applied only if the suspect in fact was guilty of the crime. See Pandjiris v. Hartman, 196 Mo. 539, 94 S.W. 270, 272 (1906) (the “only plea of justification or excuse is that plaintiff was guilty of the crime for which he was arrested”). As a result, no matter how reasonable the merchant’s suspicion may have been, only a subsequent conviction would protect the merchant from civil liability to the person detained. See, e.g., Titus v. Montgomery Ward & Co., 232 Mo.App. 987, 123 S.W.2d 574, 578 (1938) (concluding that, because the employee “acted indiscreetly, or with bad judgment, or through mistake, and arrested, restrained and searched a person not guilty, her employer is responsible”).
In 1941, however, this Court abandoned this restriction. Expressly overruling Pandjiris, this Court held:
In an effort to harmonize the individual right to liberty with a reasonable protection to the person or property of the defendant, it should be said in such a charge of false imprisonment, where a defendant had probable cause to believe that the plaintiff was about to injure defendant in his person or property, *834 even though such injury would constitute but a misdemeanor, that probable cause is a defense, provided, of course, that the detention was reasonable.
Teel v. May Dep’t Stores Co., 348 Mo. 696, 155 S.W.2d 74, 78 (1941) (quoting Collyer v. S.H. Kress & Co., 5 Cal.2d 175, 54 P.2d 20, 23 (1936)) (quotation marks omitted).
Based on the evidence in that case, Teel holds as a matter of law that there was no “unreasonable or unlawful detention of plaintiff ... up to the time of obtaining the return of the goods.” Id. at 79. But, rather than let the plaintiff go when they recovered the stolen merchandise, the store employees detained her until she signed a confession admitting to the attempted theft. The Court held that this was actionable. Id. at 80.
If the employees did not believe plaintiffs explanation, the Court noted that the employees “might have been within their rights if they had called the authorities to take [Plaintiff] into custody and preferred charges against [Plaintiff].... ” Id. at 79. But Teel holds it is “well settled that unreasonable delay in releasing a person, who is entitled to be released, or such delay in calling, taking him before or turning him over to proper authorities ... would thereafter amount to false imprisonment.” Id. As a result, the Court remanded the case for a new trial because “neither the privilege to restrain plaintiff for the purpose of obtaining return of the goods or in order to turn her over to the proper authorities ... would give [a merchant] any authority to hold plaintiff to compel her to give a confession in violation of her civil rights under the Constitution of this State.” Id. at 80.
The General Assembly codified Teel in 1961 in what is now section 537.125 (later amended in 1985). Subsection 2 of this statute provides:
2. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking of merchandise or money from a mercantile establishment, may detain such person in a reasonable manner and for a reasonable length of time for the purpose of investigating whether there has been a wrongful taking of such merchandise or money. Any such reasonable detention shall not constitute an unlawful arrest or detention, nor shall it render the merchant, his agent or employee, criminally or civilly liable to the person so detained.
§ 537.125.2 (emphasis added).
The remaining two subsections of section 537.125 expound on the privilege set forth in subsection 2. Subsection 3 explains when that privilege is triggered, i.e., what constitutes “reasonable grounds or probable cause to believe that a person has committed or is committing a wrongful taking.” It states:
3. Any person willfully concealing unpurchased merchandise of any mercantile establishment, either on the premises or outside the premises of such establishment, shall be presumed to have so concealed, such merchandise with the intention of committing a wrongful taking of such merchandise within the meaning of subsection 1, and the finding of such unpurchased merchandise concealed upon the person or among the belongings of such person shall be evidence of reasonable grounds and probable cause for the detention in a reasonable manner and for a reasonable length of time, of such person by a merchant, his agent or employee, in order that recovery of such merchandise may be effected, and any such reasonable detention shall not be deemed to be unlawful, nor render *835 such merchant, his agent or employee criminally or civilly liable.
§ 537.125.3 (emphasis added). Subsection 4 then describes the breadth of the privilege and the liabilities from which the meis chant is protected:
4. Any merchant, his agent or employee, who has reasonable grounds or probable cause to believe that a person has committed a wrongful taking of property, as defined in this section, and who has detained such person and investigated such wrongful taking, may contact law enforcement officers and instigate criminal proceedings against such person. Any such contact of law enforcement authorities or instigation of a judicial proceeding shall not constitute malicious prosecution, nor shall it render the merchant, his agent or employee criminally or civilly liable to the person so detained or against whom proceedings are instigated.
§ 537.125.4 (emphasis added).
Accordingly, under the principles first adopted in Teel and later codified in section 537.125, a merchant is privileged to detain — in a reasonable manner and for a reasonable time — any person the merchant has a reasonable suspicion or probable cause to believe is committing (or has committed) a wrongful taking of the merchant’s property. The merchant may detain such a person for the purpose of recovering the merchandise and also for the purpose of investigating whether a wrongful taking actually occurred (or was occurring) and, if so, for the purpose of contacting law enforcement and instigating criminal proceedings. Provided this detention is conducted in a reasonable manner and for a reasonable time, the merchant is protected from all liability (civil and criminal) to the person detained.

I. Point One

At trial, Barkley argued that Instruction No. 9[2] (i.e., the verdict director on her claim of battery) should be given by itself. She objected to the proposed “tail” to this instruction referring the jury to Instruction No. 10[3] (i.e., Price Chopper’s affirmative defense to the battery claim). Specifically, Barkley objected that Instruction No. 10:
... submits inapplicable and inappropriate defenses to plaintiffs battery claim. It misstates the law with respect to plaintiffs battery claim and the law with respect to defenses to battery. Further, we object because it is not supported by the evidence and misleads the jury as to the law and the evidence.
*836 In her motion for a new trial, Barkley restated this objection and added a new claim that Instruction No. 10 constitutes “prohibited conjunctive Submission of multiple theories of defense all of which are not supported by either the law or the evidence, see MAI 1.02.” She does not raise this unpreserved “multiple theories” claim on appeal, however, and that claim is abandoned.
In the court of appeals, Barkley asserted two claims based on Instructions Nos. 9 and 10.[4] Her first point relied on in that brief states:
Point I: The Trial Court erred in refusing Plaintiffs proposed verdict directing instruction submitting her battery claim which did not include reference to the affirmative defense of resisting invasion of property as hypothesized in M.A.I. instruction 32.10 and instead giving, at Defendant’s request and over Plaintiffs objection, Instruction Number 9, which included reference to such defense, and Instruction Number 10, submitting such defense because such refusal and submissions do not comply with the requirements of Rule 70.02 V.A.M.R. in that Plaintiffs proposed verdict directing instruction was applicable to Plaintiffs battery claim and thus was required to be given to the exclusion of any other instructions on the same subject and because Instructions Numbers 9 and 10 direct the jury to find for Defendant if it believed that Defendant used reasonable force to prevent Plaintiff from fleeing the Loss Prevention Office and such facts do not constitute a defense to battery under the applicable law and such instructions thereby misstated the applicable law, misdirected the jury and misled the jury resulting in prejudicial error.
Under Rule 84.04(d)(1)(A), an appellant’s point relied on must first identify the action of the trial court that is being challenged. In Point I, Barkley challenges the trial court’s decision to reject her verdict director on the battery claim and to give, instead, Instructions Nos. 9 and 10, presenting both the battery claim and an affirmative defense to that claim. Next, under Rule 84.04(d)(1)(B), the- appellant must use the “because” clause to “state concisely the legal reasons for the appellant’s claim of reversible error.” Here, Barkley claims it was error to give Instructions Nos. 9 and 10 because they “do not comply with the requirements of Rule 70.02 V.A.M.R.” Finally, Rule 84.04(d)(1)(C) requires the appellant’s point relied on to explain why, “in the context of the case, those legal reasons support the claim of reversible error.” Barkley offers two explanations why Instructions Nos. 9 and 10 violate Rule 70.02. First, she explains that “Plaintiffs proposed verdict directing instruction was applicable to Plaintiffs battery claim and thus was required to be given to the exclusion of any other instructions on the same subject.” Second, Barkley explains that there is no affirmative defense allowing Price Chopper to use force to prevent her from fleeing, even if the force used was reasonable.
The determination of whether a jury was instructed properly is a question of law, which this Court reviews de novo. Doe 1631 v. Quest Diagnostics, Inc., 395 S.W.3d 8, 13 (Mo. banc 2013). That review considers the evidence “in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is prop- *837 er.” Bach v. Winfield-Foley Fire Protection Dist., 257 S.W.3d 605, 608 (Mo. banc 2008). Even if the giving of a particular instruction was error, however, this Court will vacate a judgment based on the jury’s verdict “only if the error resulted in prejudice that materially affects the merits of the action.” Klotz v. St. Anthony’s Med. Ctr., 311 S.W.3d 752, 767 (Mo. banc 2010).
As set out in her first point, Barkley claims that Instruction No. 9 should have been given without the “tail,” referring to the affirmative defense in Instruction No. 10. She argues that, because Instruction No. 9 is the battery instruction provided in MAI 23.02, it must be given by itself and without reference to any other instruction. For support, Barkley cites Rule 70.02(b), which provides: “Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, such instruction shall'be given to the exclusion of any other instructions on the same subject.” Barkley’s claim fails.
MAI 23.02, the pattern verdict director on which Barkley relies, specifically requires that the following language be added whenever an affirmative defense is submitted: [“unless you believe that plaintiff is not entitled to recover by reason of Instruction Number _ (here insert number of affirmative defense instruction) ].” The “tail” on Instruction No. 9 complies with this requirement; therefore, the trial court did not err in giving Instruction No. 9 in that form. See Edgerton v. Morrison, 280 S.W.3d 62, 68 (Mo. banc 2009) (denying a similar claim and holding that the addition of the phrase “as submitted by Instruction No. 11” to verdict form “did not mislead the jury”).
Barkley’s alternative argument in Point I is that Price Chopper was not privileged to use any force — even reasonable force— to prevent her from fleeing once the store employees had recovered the merchandise hidden in her bag. In other words, she contends that the protection of the merchant’s privilege does not extend to claims of battery and, even if it does, Barkley contends that the privilege ends as soon as the merchant recovers its merchandise. Both contentions are incorrect.
First, even though Teel dealt with a claim of false imprisonment, the merchant’s privilege is not limited to such claims. The privilege to detain necessarily includes the privilege to use reasonable force (i.e., a battery), or to threaten the use of such force (i.e., an assault), to accomplish this detention. As the Supreme Judicial Court of Massachusetts noted, the merchant’s privilege would be “meaningless if reasonable force cannot be used. It makes no sense to assume that shoplifters caught in the act will simply comply with a request to wait for the police to arrive.” Commonwealth v. Rogers, 459 Mass. 249, 945 N.E.2d 295, 306 (2011).
In addition, Barkley’s argument that the merchant’s privilege does not protect merchants from claims of battery contradicts the language of section 537.125. The statute explicitly permits the merchant to do several things, including detaining the suspect in a reasonable manner and for a reasonable time, investigating whether the suspect committed a wrongful taking, and contacting law enforcement to initiate criminal proceedings. But the protection for merchants provided by section 537.125 is not limited to the claims most closely associated with those actions, i.e., false imprisonment, slander, or malicious prosecution. Instead, section 537.125 protects the merchant from all liability (civil and criminal) to the person detained.
Barkley’s second contention also fails. She argues that the only purpose of the *838 merchant’s privilege is to recover stolen property and, therefore, the privilege ends as soon as that purpose is achieved. The only basis for her argument is section 537.125.3, which states that the merchant is permitted to detain the suspect “in a reasonable manner and for a reasonable length of time ... in order that recovery of such merchandise may be effected.” But Barkley’s argument ignores the remainder of the statutory language and the common law breadth of this privilege.
Teel recognizes that a merchant is allowed to restrain a suspected shoplifter in a reasonable manner and for a reasonable time for three purposes, i.e., “for the purpose of investigation,” as well as “for the purpose of obtaining return of the goods or in order to turn her over to the proper authorities!.]” Teel, 155 S.W.2d at 79-80. Section 537.125, too, permits reasonable detentions not only for the purpose of recovering the property, as noted in subsection 3, but also for the purpose of “investigating whether there has been a wrongful taking of such merchandise or money.” § 537.125.2. The statute expressly authorizes that, once a merchant “has detained such person and investigated such wrongful taking, [it] may contact law enforcement officers and instigate criminal proceedings against such person[.]” § 537.125.4. As a result, not only does section 537.125 not reject the principle from Teel that a merchant may detain a suspect in a reasonable manner and for a reasonable time in order to turn her over to the police, it expressly incorporates and reinforces that principle.
Accordingly, the Court holds that the merchant’s privilege is not extinguished the instant the merchandise is recovered. Instead, the merchant is privileged to detain the person to determine whether the person actually was committing (or had committed) a wrongful taking and — if so — to detain that person for the purpose of summoning the police and initiating criminal proceedings. As long as the detention is carried out in a reasonable manner and for a reasonable time, the merchant cannot be liable to the person detained under any theory, civil or criminal, including a claim that the merchant used or threatened to use reasonable force to accomplish the detention. Accordingly, Barkley’s claim that there is no affirmative defense to her claim of battery is rejected.[5]
Barkley also attempts to argue that Instruction No. 10 is not a proper modification of the MAI 32.10 instruction because the acts it references (i.e., that Barkley “refused to follow defendant’s loss prevention officers’ instructions or attempted to flee the loss prevention office”) are not “unlawful acts” of the type referred to in the directions for using MAI 32.10. This argument is not properly before this Court, however.
Barkley did not claim at trial (or in her new trial motion) that Instruction No. 10 inaccurately stated the elements of the merchant’s privilege that Price Chopper pleaded (and the trial court found adequate proof to submit) as an affirmative defense to battery. Instead, she argued that Price Chopper had no affirmative defense to battery. That is why her objection at trial was only that Instruction No. 9 should be given without a “tail” and Instruction No. 10 should not be given at all. In the court of appeals, too, Barkley’s *839 Point I did not claim that Instruction No. 10 improperly articulated Price Chopper’s affirmative defense. Instead, as at trial, Point I claimed only that Price Chopper had no affirmative defense to her claim of battery and, therefore, the trial court erred by giving Instruction No. 10 and by altering Instruction No. 9 to refer to it.
When this Court granted transfer pursuant to Rule 83.04, Barkley asserted — for the first time in this case — that Instruction No. 10 was not properly drafted and/or that the evidence was insufficient to support the specific factual propositions recited there (rather than arguing that the evidence was insufficient to support any affirmative defense to battery, which is what Barkley argued in the trial court and the court of appeals). To accomplish this, Barkley used her substitute brief to add three new claims to her Point I. Specifically, Barkley added claims that Instruction No. 10: “(1) hypothesized facts not supported by the evidence, (2) included unauthorized deviations from M.A.I. 32.10 by failing to hypothesize unlawful conduct as required in M.A.I. 32.10 paragraph 1, [and] (3) misstated the law in that they purport to authorize the use of force in response to conduct which is not unlawful!.]” Such new claims are not permitted.
Rule 84.13(a) unambiguously provides that “allegations of error not presented to or expressly decided by the trial court shall not be considered in any civil appeal from a jury tried case.” In addition, Rule 83.08(b) provides that — if an appellant elects to file a substitute brief after transfer — it “shall not alter the basis of any claim that was raised in the court of appeals brief[.]” Accordingly, Barkley’s new arguments are not properly before the Court and will not be addressed. See Blackstock v. Kohn, 994 S.W.2d 947, 953 (Mo. banc 1999) (Court may not review challenge to instruction where appellant “did not raise this claim before the court of appeals”).
Barkleys new argument, now championed by the dissenting opinion in this Court, did not originate with Barkley in the trial court. It originated with the dissenting opinion in the court of appeals. Absent some constitutional imperative not present here, however, it simply is not the role of the court of appeals or this Court to grant relief on arguments that were not presented to or decided by the trial court. This rule abides regardless of the merits of the new argument.[6] “Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court.” In re Adoption of C.M.B.R., 332 S.W.3d 793, 814 (Mo. banc 2011) (quoting Robbins v. Robbins, 328 S.W.2d 552, 555 (Mo.1959)). See also Brown v. Brown, 423 S.W.3d 784, 788 (Mo. banc 2014) (“issue that was never presented to or decided by the trial court is not preserved for appellate review”); Smith v. Shaw, 159 S.W.3d 830, 835 (Mo. banc 2005). This is why Rule 84.13(a) unambiguously provides that “allegations *840 of error not presented to or expressly-decided by the trial court shall not be considered in any civil appeal from a jury tried case,” and it is why Rule 83.08(b) prohibits appellants from “altering] the basis of any claim that was raised in the court of appeals brief[.]”

II. Point Two

Barkley’s second point relied on (both in this Court and the court of appeals) states:
Point II: The Court erred in giving Instruction No. 10, defendant’s affirmative defense to battery, because it was not supported by competent and substantial-evidence in that Instruction No. 10 hypothesized that all of the batteries inflicted upon plaintiff were inflicted after and as a result of her alleged attempt to flee the loss • prevention office when in fact the evidence showed that numerous batteries were inflicted upon her before the alleged attempt to flee the loss prevention office.
When read through the rubric of Rule 84.04(d)(1)(C), Point II also challenges the trial court’s decision to give Instruction No. 10 as an affirmative defense to battery. Here, however, Barkley claims that the legal reason the trial court erred in giving Instruction No. 10 is “because” that instruction was not supported by the evidence. Barkley then explains Instruction No. 10 was not supported by the evidence “in that” it presumes all of the batteries committed by Price Chopper were inflicted after (and, therefore, as a result of) her attempt to flee even though the evidence shows that she suffered other batteries before attempting to flee. Because she insists some of the batteries came before— and, therefore, did not result from — her attempt to flee, Barkley claims that, even if the jury found the facts required by Instruction No. 10, that defense would excuse only some — but not all — of the batteries in Instruction No. 9.
As above, this Court cannot consider Barkley’s Point II because it seeks to assert a claim that was never presented to— or ruled on by — the trial court. Barkley raised this same claim in the court of appeals, so — unlike Point I — she did not compound her failure to preserve this claim in the trial court by violating Rule 83.08(b), as well. Nevertheless, under Rule 84.13(a), Barkley’s failure to assert her claim in Point II to the trial court precludes any review of that claim here. See Blackstock, 994 S.W.2d at 953 (after rejecting one challenge to a jury instruction under Rule 83.08(b) because it was not raised in the court of appeals, this Court rejected another challenge to the same instruction under Rule 84.13(a) because appellant “failed to object on this ground at the instruction conference” at trial).
Barkley’s objection to Instruction No. 10 at trial (and in her motion for a new trial) was based on her assertion that the merchant’s privilege ended as soon as the store recovered its merchandise and, even if it continued, the privilege did not permit Price Chopper to use any force — even reasonable force — to detain her. Barkley did not argue that there were two (or two sets of) batteries, i.e., those occurring prior to her attempted flight and those occurring after. Nor did she argue that Price Chopper’s affirmative defense was sufficient to justify only the latter and not the former. Because Barkley did not present these claims to the trial court, Rule 84.13(a) precludes this Court from considering them now. See Giddens v. Kansas City S. Ry. Co., 29 S.W.3d 813, 823 (Mo. banc 2000) (“Where an alleged error on appeal relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal.”); Emery v. Wal-Mart Stores, Inc., 976 S.W.2d 439, *841 445 (Mo. banc 1998) (same); Reid v. St. Louis & S.F. Ry. Co., 187 S.W. 15, 18 (Mo.1916) (“What we hold is that, when counsel stated he had only a certain objection to make, he thereby limited the trial . court’s examination of the instruction to that one objection, and limits himself to that objection on appeal.”).
Barkley responds that she raised a general objection at trial that Instruction No. 10 was “not supported by the evidence” and argues that this should be sufficient to preserve her current claim that the trial court erred in giving Instruction No. 10 because that instruction erroneously implies that all of the batteries occurred after her attempted flight. The Court disagrees. Nothing in the trial transcript or Barkley’s motion for a new trial suggests that Barkley made — or that the trial court expressly rejected — the claim that Instruction No. 10 failed to distinguish between those batteries which occurred after she attempted to flee and those which occurred before she attempted to flee. Accordingly, Barkley’s second point was not preserved and cannot be reviewed in this Court.
Even if Barkley had preserved this argument, it would fail because the scope of the batteries at issue in this case is determined by Instruction No. 9. The description of the batteries in Instruction No. 9 was written by Barkley — not Price Chopper — and it also fails to draw any distinction between pre-flight and post-flight batteries. Barkley cannot complain that Instruction No. 10 fails to draw a distinction that she failed to draw in Instruction No. 9. See Outman v. Union News Co., 237 S.W. 800, 801 (Mo.1922) (appellant “cannot complain of defendant’s instruction 8, as it is in harmony with her own instruction”); Lange v. Missouri Pac. Ry. Co., 208 Mo. 458, 106 S.W. 660, 665 (1907) (“party cannot complain of an instruction which is in harmony with one given at his own request”).
It was Barkley — not Price Chopper— who decided what batteries to submit to the jury and whether to submit them in one count or two. And it was Barkley— not Price Chopper — who chose to describe the single count of battery in Instruction No. 9 as follows: “[D]efendant intentionally pulled plaintiffs arms behind her back, handcuffed her, knocked her to the floor and pulled her to a sitting position as her hands were handcuffed behind her back.” These acts all occurred after Barkley attempted to flee, not before. Barkley admits — in her court of appeals brief and in her substitute brief — that the only time her hands were handcuffed behind her, the only time she was knocked to the floor, and the only time she was “pulled to a sitting position” on the floor, was after she ran to the door. Barkley cannot parse the record on appeal in hopes of finding a version of the .facts that will contravene the giving of Instruction No. 10 because this “Court reviews the record in the light most favorable to submission of the instruction.” Hayes v. Price, 313 S.W.3d 645, 650 (Mo. banc 2010).
Finally, even if Instruction No. 9 encompasses actions that occurred both before and after Barkley attempted to flee, Instruction No. 10 excused any batteries that occurred due to her attempted flight or her failure to follow the employees’ commands. One way to effect a detention is to tell the detainee to stay put, and then use force when the detainee refuses to comply. As the dissenting opinion points out, the real question in this trial was whether the Price Chopper employees’ commands — and their subsequent force to compel compliance with those commands — were reasonable. But that question is for the jury, not this Court, to resolve. Barkley and Price Chopper argued this question extensively *842 to the jury, and the jury gave its answer. Whatever flaws there may (or may not) be in Instruction No. 10, it effectively focused the jury’s attention on this central question, and there is no basis to reject the answer the jury gave.
Accordingly, because Barkley’s claim was not preserved in the trial court, and because that claim lacks merit even if it had been preserved, this point is denied.

III. Points III and IV

Barkley’s third and fourth points challenge the admission and exclusion of certain items of evidence. The trial court has broad discretion in admitting or excluding evidence. Moore v. Ford Motor Co., 332 S.W.3d 749, 756 (Mo. banc 2011). A trial court abuses its discretion only when its ruling is “clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.” In re Care & Treatment of Donaldson, 214 S.W.3d 331, 334 (Mo. banc 2007). Even when an evidentiary ruling is in error, this Court will not set aside the jury’s verdict unless that error likely changed the outcome of the case. Rule 84.13(b).
First, Barkley argues that the trial court erred in admitting, over her timely and specific objection, letters written by her physician that detail her physical condition in 2007 and 2011. Barkley asked her doctor to write these letters in support of her requests to be excused from jury duty. She claims that they are improper character evidence and are not relevant to any issue in the case. Even if the letters are relevant, Barkley contends they served only to “alienate and foster resentment by the Jurors who were serving” and, therefore, their prejudicial effect outweighed whatever probative value they may have had. Accordingly, Barkley claims the admission of this evidence was reversible error and a new trial is required.
At trial, Barkley argued that the letters and related testimony were “not probative to any issue” and were “highly prejudicial.” The trial court ruled that, given the nature of the damages Barkley was seeking, evidence of her physical condition both before and after the incident at Price Chopper was relevant and the letters would be admitted on that basis. Barkley insisted that she already had conceded substantial preexisting health problems and, therefore, there was no need for the 2007 and 2011 letters. The trial court overruled her objections on the ground that Price Chopper was not limited to Barkley’s evidence of her prior conditions, and it found that the letters were not unduly prejudicial.[7] This ruling was not an abuse of discretion.
In personal injury claims, evidence concerning the plaintiffs health and physical condition that tends to prove or disprove the nature or extent of plaintiff s alleged injuries is admissible. Eickmann v. St. Louis Pub. Serv. Co., 323 S.W.2d 802, 806 (Mo.1959). Accordingly, the letters detailing Barkley’s physical condition both two years before and two years after the 2009 incident at Price Chopper were logically relevant. State v. Tisius, 92 S.W.3d 751, 760 (Mo. banc 2002) (evidence-is logically relevant if it tends to make any fact of consequence more or less likely than it would be without the evidence). A plaintiff does not get to decide which evidence will (and will not) be used to prove or disprove particular facts, nor is a defen *843 dant prohibited from presenting relevant evidence merely because the plaintiff already has done so.
Legal relevance, on the other hand, “weighs the evidence’s probative value against unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness.” Johnson v. State, 406 S.W.3d 892, 902 (Mo. banc 2013) (quotation marks omitted). Here, the probative value of these letters is clear because they detail Barkley’s conditions both before and after she allegedly was injured at Price Chopper. And, despite her protestations to the contrary, it does not appear there was any unfair prejudice in admitting them. If the statements in these letters are true, and no one argued they were not, there is no reason to assume that the jury would have held Barkley’s requests to be excused from jury duty against her. Even if there is a reasonable likelihood that the jury would misuse this evidence in that way, the proper remedy would be a limiting instruction, not exclusion. Barkley requested no such instruction. Accordingly, the trial court did not abuse its discretion in ruling that the letters (and the physician’s testimony concerning them) were admissible. This point is denied.
Finally, Barkley argues that the trial court erred in excluding: (1) personnel records showing that one of Price Chopper’s employees had received reprimands for similar conduct both before and after Barkley’s incident; and (2) court records showing that a different plaintiff brought a similar claim against Price Chopper in the past. Because Barkley argues that these records were relevant solely to her claim for punitive damages, this claim cannot succeed. Even if this Court assumes for the sake of argument that the trial court erred in excluding these records, that error cannot have been prejudicial to Barkley. The jury never reached the question of punitive damages, or had occasion to consider the evidence relevant to that claim, because the jury found for Price Chopper on both Barkley’s battery and false imprisonment claims. Accordingly, any error by the trial court regarding the evidence for or against such damages was harmless. This point is denied.

Conclusion

For the reasons set forth above, the trial court’s judgment is affirmed.
Russell, C.J., Breckenridge and Fischer, JJ., concur;
Stith, J., concurs in part and dissents in part in separate opinion filed;
Draper and Teitelman, JJ., concur in opinion of Stith, J.

. Unless otherwise stated, all statutory references are to the Revised Statutes of Missouri, 2000.

. As given, Instruction No. 9 reads:
Your verdict must be for plaintiff if you believe:
First, defendant intentionally pulled plaintiff's arms behind her back, handcuffed her, knocked her to the floor and pulled her to a sitting position as her hands were handcuffed behind her back; and
Second, defendant thereby caused plaintiff bodily harm,
unless you believe that plaintiff is not entitled to recover by reason of Instruction Number 10.

. As given, Instruction No. 10 reads:
Your verdict must be for defendant [Price Chopper] on plaintiff Deborah Barkley’s claim for battery if you believe:
First, plaintiff Deborah Barkley either refused to follow defendant’s loss prevention officers’ instructions or attempted to flee the loss prevention office, and Second, defendant’s loss prevention officers handcuffed and leg swept plaintiff for the purpose of resisting plaintiff's attempt to flee the loss prevention office, and
Third, defendant’s loss prevention officers used only such force as was reasonable and necessary to prevent plaintiff from fleeing the loss prevention office.

. Barkley sought to supplement these claims after this Court granted transfer, but, as discussed below, Rule 83.08(b) does not permit an appellant to alter the basis of claims raised in the court of appeals.

. Other jurisdictions with statutes similar to section 537.125 have found that the privilege includes a right to detain for the police after recovery of the items and an investigation. See Jacques v. Sears, Roebuck & Co., 30 N.Y.2d 466, 334 N.Y.S.2d 632, 285 N.E.2d 871, 874, 876 (1972); Cooke v. J.J. Newbeny & Co., 96 N.J.Super. 9, 232 A.2d 425, 427-28 (App.Div.1967).

. Because Barkley did not preserve or properly raise any claim regarding the language of Instruction No. 10, the Court takes no position on whether it was the best way — or even a proper way — to present the merchant's privilege and section 573.125 as an affirmative defense to a claim of battery. At trial, Price Chopper used MAI 32.13 to present this affirmative defense to Barkley's claim of false imprisonment, and Barkley does not challenge that instruction or the jury’s verdict against her in this appeal. But, perhaps believing that it applied only to claims of false imprisonment, Price Chopper did not use MAI 32.13 as the basis for its affirmative defense to battery in Instruction No. 10. Instead, it modified MAI 32.10 (resisting invasion of property) in order to present the reasonableness of the force that was used to effect Barkley's detention.

. The trial court ordered Price Chopper not to use these letters to challenge Barkley’s veracity (e.g., by suggesting Barkley had fabricated or exaggerated her conditions to get out of jury service), and Barkley does not claim that this limitation was violated.